[No. 1876. Decided April 13, 1896.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK L. BOKIEN, *Appellant*.

FALSE PRETENCE — DESCRIPTION OF OFFENSE IN INFORMATION — EVIDENCE — NAMES OF WITNESSES — JURY — SELECTION AND CERTIFICATION — EXAMINATION OF JUROR — ARGUMENT OF COUNSEL.

In a prosecution for obtaining goods under false pretences the information is sufficient, if it appears therefrom, though not by direct and positive averment, that a party was induced to part with his property by reason of certain specified false pretences.

County commissioners are, by the giving of a proper bond, entitled to hold the office and to discharge its duties, including the selection of the list of jurors, although the clerk of the superior court of the county who, under Laws 1893, p. 177, is chargeable with the duty of passing upon the sufficiency of the bonds may have merely

indorsed thereon that such bonds were " approved as to sufficiency of sureties."

Mere informalities in drawing, selecting and certifying a jury list by the county commissioners are not ground of challenge to the panel, if it appears that the commissioners selected the list and caused it to be transmitted to the clerk of the court.

On the examination of a juror on his *voir dire* it is not proper to ask the juror the question: "After hearing all the evidence and the testimony and the instructions of this court in the cause, if there yet remains in your mind a reasonable doubt regarding the guilt of the defendant would you return a verdict of not guilty in his favor ?"

The court may permit the indorsement of names of additional witnesses on the information during the course of the trial, in furtherance of justice, which action, in case of surprise, would entitle defendant to a reasonable continuance for the purpose of meeting the unexpected evidence.

In a prosecution for obtaining goods under false pretences by the giving of a check upon a bank in which the defendant had no funds, it is error to allow the prosecution to introduce testimony of other checks having been given by defendant to other persons when he had no funds on deposit.

The mere calling attention to how the defendant looks, by the prosecuting attorney in his argument to the jury, does not overstep the limits of fair debate and constitute prejudicial misconduct.

No valid objection can be made to remarks of counsel on evidence that has been admitted by the court, although it was improperly admitted.

Appeal from Superior Court, Pierce County.— Hon. EMMETT N. PARKER, Judge.    Reversed.

*Francis W. Cushman, Charles Ethelbert Claypool,* and *Edward E. Cushman,* for appellant.

*B. W. Coiner,* Prosecuting Attorney, for The State.

The opinion of the court was delivered by

ANDERS, J.—The information upon which the defendant and appellant was tried and convicted charges that:

"The said Frank L. Bokien on or about the 31st

day of December, 1894, at the County of Pierce and
State of Washington, and within one year next prior
to the filing of this information, did unlawfully, felo-
niously, designedly and with intent to defraud one I.
J. Sharick, that he, the said Frank L. Bokien, then
had on deposit in the Pacific National Bank of the
City of Tacoma, in the State of Washington, the sum
of eleven dollars, which said sum of money he, the
said Frank L. Bokien, then and there feloniously,
designedly and falsely and with intent to defraud
the said I. J. Sharick represented and pretended to
the said I. J. Sharick that he, the said Frank L. Bo-
kien, then and there had a right to draw out of said
bank by check in the ordinary mode, and did then
and there feloniously, designedly and with intent
to defraud the said I. J. Sharick further falsely
represent and pretend to him the said I. J. Sharick
that he, the said Frank L. Bokien, had the right and
authority to draw a bank check on said Pacific Na-
tional Bank for the sum of eleven dollars, and that
a certain bank check drawn by said Frank L. Bokien
on said bank, payable to the bearer, or said I. J. Sha-
rick, for the sum of eleven dollars, which check he
then and there delivered to said Sharick, was a good
and valid order for the payment of said sum of money,
and would be paid by said bank on presentment for
payment.   Whereas, in truth and fact he, the said
Frank L. Bokien, did not then have on deposit in said
bank the sum of eleven dollars, and did not then and
there have a right to draw out of said bank said sum
of eleven dollars, by check or otherwise, and did not
then have the right or authority to draw a bank check
on said bank for said sum of eleven dollars, and said
check delivered to said Sharick as aforesaid was not a
good or valid order for the payment of said sum of
eleven dollars, and was not paid by said bank on the
presentment thereof for payment.   All of which said
false representations and pretences the said Frank
L. Bokien then and there well knew to be false; by
color and by means of which said false representations
and false pretences he, the said Frank L. Bokien, did

then and there unlawfully, fraudulently, feloniously and designedly obtain from the said I. J. Sharick one silver plated water pitcher of the value of eleven dollars, of the personal property of the said I. J. Sharick, with the intent then and there feloniously to cheat and defraud him, the said I. J. Sharick."

This information was drawn upon § 234 of the Penal Code, which provides that, "if any person with intent, to defraud another, shall designedly, by color of any false token or writing, or any false pretense, obtain from any person any . . . thing of value, such person shall, upon conviction thereof, be imprisoned," etc.

The information was demurred to in the trial court, on the ground that it failed to state facts sufficient to constitute a crime, and the same objection is urged here. It is claimed by appellant that it is defective in that it does not allege "the relation of the fraud to the bargain which in case of sale must appear;" or, in other words, that it is not averred therein that the alleged false pretences were made with a view to effect the sale of the pitcher, and that by reason thereof the party was induced to make the sale and part with his property.

It is a well settled rule that an indictment or information must set forth all the facts and circumstances necessary to constitute the crime sought to be charged. If, therefore, as defendant claims, the omitted allegations are necessary under our statute in order to charge the offense of obtaining property by means of false pretences, it follows that the information is insufficient. That such averments are necessary seems to have been decided in *State v. Philbrick*, 31 Me. 401; *Commonwealth v. Strain*, 10 Metc. (Mass.) 521; *State v. Orvis*, 13 Ind. 569, and some other cases cited by appellant. But we

are not prepared to hold that it must be specifically
and positively averred, in cases of sale or exchange,
that the false pretenses were made with a view to effect
such sale or exchange, and that by reason of the al-
leged pretenses the party defrauded was induced to sell
or exchange, as the case may be.  It seems to us that
whatever is necessarily implied from the language used
ought to have the same force and effect as if specifi-
cally alleged, and that if it appears from the informa-
tion, though not by direct and positive averment, that
a party was induced to part with his property by reason
of certain specified false pretenses, such information
is sufficient under the statute, if not objectionable in
other respects.  It will be noticed that, although the
information in this case does not allege in express
terms that the prosecutor Sharick sold or exchanged
the pitcher for the check, or that he was induced to
part with it by the alleged pretenses, it does allege in
substance, among other necessary facts, that appellant
represented and pretended that the check was good
and valid; that it would be paid on presentation at the
bank; that it was delivered to Sharick; that the alleged
representations were false and that appellant knew
them to be false, and that by means thereof he ob-
tained the pitcher from Sharick.  If it be true that
appellant obtained the property from Sharick by means
of the alleged pretenses, it must also be true that the
latter relied on the pretenses and was induced thereby
to part with his property.  It would manifestly be im-
possible for one person to obtain the property of an-
other by means of false pretenses which had no influ-
ence upon his mind, and in no way induced him to
make the transfer.  While this information may not
be, in all respects, as perfect in form as it might have
been, we are nevertheless of the opinion that it sets

forth facts sufficient, under the provisions of our code, to constitute the offense of obtaining property under false pretences. And it may be added that, according to the view of Mr. Bishop, it contains all the allegations essential to a good information. Bishop's Directions and Forms, § 419, *et seq.* See, also, Desty's Am. Crim. Law, § 149a, and *People v. Jordan*, 66 Cal. 10 (56 Am. Rep. 73, 4 Pac. 773).

Prior to the calling of the jury, the defendant moved the court to quash and set aside the entire panel of jurors, on the grounds, (1) that the one hundred names were selected by the old and not the new board of county commissioners; (2) that the commissioners selecting the same never qualified according to law; and (3) that the list of one hundred names was not properly certified, or certified at all, to the clerk of the court.

The first ground of the motion was abandoned on the argument, and we think the remaining two are without substantial merit. By § 58 of the Code of Procedure it is provided that, every board of county commissioners "shall select . . . the names of one hundred persons to serve as petit jurors for the ensuing year," and shall certify the same to the clerk of the superior court; and each county commissioner, before entering upon the duties of his office, is required to give a bond to the county in a specified amount, "which bond and the sureties thereon shall be approved by the clerk of the superior court of the proper county. (Laws 1893, p. 177.) In approving the bonds of the respective commissioners, the clerk indorsed thereon, or attached thereto, the words, "This bond approved as to sufficiency of sureties this 5th day of September, 1893," and it is argued that because the clerk did not also specifically state that he approved the bond as to its

form and substance, as well as to the sureties, the commissioners were not qualified to select the list of jurors, and that the selection made by them was consequently absolutely null and void. It is not claimed that the bond itself is in fact insufficient or defective, or that it is not a binding obligation upon the commissioners. We must, therefore, assume that the commissioners gave the bond required by law and in fact did all that was necessary to qualify themselves to enter upon the duties of their office. By giving a proper bond they each became entitled to hold the office and to discharge its duties. They were the county commissioners of Pierce county, and therefore were the proper persons to select the list of jurors.

But it is claimed on behalf of appellant that, even if the commissioners were qualified to make the selection, they failed to certify the list of names selected to the clerk of the superior court, as required by statute, and that the panel drawn from the list should have been set aside for that reason, if for no other. It is true that the board of commissioners do not say in express terms that they "certify" to the correctness of the list selected by them, but they do say that "pursuant to § 58 of Hill's Code, the commissioners of Pierce county have selected one hundred names from persons of their county competent to serve as petit jurors, and hereby instruct the clerk of the board to certify the same to the clerk of the superior court as the list of petit jurors drawn for the ensuing year, as follows." The names of the persons so selected are then set out, after which appears the signature of the chairman of the board, attested by the county auditor. From this we think it sufficiently appears that the commissioners selected the list and caused it to be transmitted to the clerk of the court, and that is substantially all that

the law requires.    Mere informalities in drawing and
selecting the jury list, which can work no injury to
any one, afford no ground of challenge to the panel
of jurors.    It was held in *Coker v. State*, 7 Tex. App.
83, that a failure of the jury commissioners to sign
and certify the jury list is no ground of challenge to
the panel of jurors drawn from such list.

As to the effect of other omissions and irregularities,
see, *Keech v. State*, 15 Fla. 591; *Carter v. State*, 56 Ga.
463; 1 Thompson, Trials, § 33.

Appellant next complains of the ruling of the court
in not permitting his counsel, on the examination of
each juror on his *voir dire*, to propound the following
question :  "After hearing all the evidence and the
testimony and the instructions of the court in this
cause, if there yet remains in your mind a reasonable
doubt regarding the guilt of the defendant, would you
return a verdict of not guilty, in his favor?"    Con-
sidered by itself we think the question was objection-
able, as it did not tend to show bias or prejudice on
the part of the juror, or want of any of the qualifica-
tions prescribed by law for a juror.    It simply called
for a statement by the juror as to what he would or
would not do in a supposed state of mind, which men-
tal state or condition would, no doubt, depend to a
greater or less degree upon the instruction of the
court.    The object and purpose of the examination of
a juror is to determine whether or not he is qualified
to sit in the trial, and for this purpose a rigid exam-
ination is allowed before his acceptance by the parties
to the cause.    But the examination should be such as
is calculated to disclose his relation to the parties or
the cause, and the actual disposition of his mind as to
the parties or the subject matter of the action, for
either of these conditions may render the juror in-

competent. (Code Proc., §§ 342–346). The examina-
tion should also, as a general rule, be directed to
existing facts, and hence merely hypothetical ques-
tions should not be propounded. 1 Thompson, Trials,
§ 102.

It is contended by the appellant that the court
erred in permitting the prosecuting attorney to indorse
the names of certain witnesses on the information after
the commencement of the trial. The statute provides
that, "All informations shall be filed in the court hav-
ing jurisdiction of the offense specified therein by the
prosecuting attorney of the proper county as inform-
ant; he shall subscribe his name thereto, and indorse
thereon the names of the witnesses known to him at
the time of filing the same, and at such time before
the trial of any case as the court may, by rule or
otherwise, prescribe, he shall indorse thereon the
names of such other witnesses as shall then be known
to him;" (Code Proc., § 1230); and it will be observed
that no express provision is made for the indorsement
of the names of any witnesses after the trial has be-
gun. Does it follow from this that the court may not
permit the indorsement of the names of witnesses
during the course of the trial, if necessary to the at-
tainment of justice? We think it does not. The
statute prescribes the duty of the prosecuting attorney
but does not undertake to define the duty or interfere
with the discretion of the court in the conduct of the
trial. If an important witness should become known
to the prosecuting attorney after the commencement
of the trial, we think it would be within the discretion
of the court either to permit his name to be indorsed
upon the information, or to allow him to testify with-
out his name being indorsed thereon at all. *State v.
Dickson,* 6 Kan. 209.

The statute of Kansas is substantially like ours, and, in our judgment, the supreme court of that state has interpreted it in accordance with reason and the principles of justice. In *State v. Cook*, 30 Kan. 82 (1 Pac. 32), the court said:

" As a general rule the court should allow the names of the witnesses of the state to be indorsed upon the information after the commencement of the trial, if it be important so to do; but of course if the defendant is taken by surprise thereby, the court should extend to him all possible facilities for a fair, full and impartial trial, and if necessary may delay or even continue the hearing of the case until he has ample opportunity to prepare to meet the evidence of the witnesses indorsed upon the information after the commencement of the trial. The prosecution ought not to be defeated simply because the county attorney does not indorse the names of the witnesses at the time of the filing the information, or before the trial, for often, during the progress of the trial, a necessity arises for the introduction of evidence which could not have been anticipated on the part of the prosecution before the commencement thereof. If the court shall be convinced that the county attorney had purposely failed to indorse on the information the names of the witnesses known to him at the time of filing the same, to render it difficult for the defendant to prepare his defense, the court may, under such circumstances, within its discretion, refuse to grant the request of the county attorney to indorse on the information the names of the additional witnesses; but in all cases where the request to indorse the names of witnesses upon the information during the trial is made in good faith, and to promote justice, the court has the authority to grant the same, keeping in view the just administration of the criminal laws and the right of the defendant for reasonable time to prepare to meet unexpected evidence·"

See, also, *State v. Sorter*, 52 Kan. 531 (34 Pac. 1036), and Wharton, Crim. Pleading and Practice, § 358.

In the case at bar the prosecuting attorney during the trial asked leave to indorse the names of two witnesses upon the information, and to call said witnesses in the examination in chief, at the same time stating to the court that he had not before known the names of said persons, or that they would be material or necessary witnesses. Defendant objected on the ground of surprise, and asked for a continuance for one week in order that he might ascertain the character and credibility of the witnesses. The court permitted the names of the witnesses to be indorsed upon the information and denied the request for a continuance. These witnesses, the bill of exceptions states, gave material testimony against the defendant, but what the testimony was, or where the witnesses resided is not disclosed by the record. It is, therefore, impossible for this court to determine whether the trial court properly exercised its discretion. But it is probably true that appellant was entitled to a reasonable continuance, but not for the length of time requested.

Upon the trial the court permitted the state to introduce in evidence, over the objection of the defendant, several checks drawn by defendant, prior to the date of the one in question, and to prove that they had been presented to the bank by the various persons to whom they were given, and were not paid because the defendant had no funds on deposit, and that defendant knew that payment thereof had been refused. It seems that this evidence in reference to the drawing and delivery of other checks was admitted for the purpose of showing the condition of defendant's bank account, and, as a consequence, the intent

with which he delivered the check to Sharick. There was no connection whatever between the several transactions which were permitted to be shown and that for which the defendant was being tried, and the evidence objected to was therefore incompetent for any purpose. We are, of course, aware that there are exceptions to the general rule that it is not competent to show the commission of another distinct crime by the defendant for the purpose of proving that he is guilty of the crime charged, but we are of the opinion that the evidence here admitted does not come within any of the exceptions. *Commonwealth v. Jackson*, 132 Mass. 16; *Barton v. State*, 18 Ohio, 221; 3 Rice, Evidence, pp. 208–211.

The evidence was not competent to prove the intent of the defendant in the particular transaction mentioned in the information, for the reason that it would not logically or legitimately follow that he intended to defraud Sharick because he had defrauded other parties at various times previously. It was not competent for the purprse of showing defendant's motive, for that, as well as his intent, would be inferred from his acts. The question of mistake was not involved in the case, and the previous transactions of the defendant, which were permitted to be shown, no more formed a part of a single scheme than the several larcenies of a thief (*State v. Kelley*, 65 Vt. 531, 36 Am. St. Rep. 884, 27 Atl. 203); and it certainly would not be competent in order to show that one had stolen certain property to prove that he committed larceny at a previous time. The evidence as to these checks which were not mentioned in the information must have been greatly prejudicial to the defendant, for it in effect compelled him, without previous notice, to acquit himself of at least seven distinct offenses in

addition to the one with which he was directly charged. Moreover, in this instance, the question of criminal intent, or guilty knowledge, was not in issue, for at the very threshold of the trial the defendant admitted that he signed the check in controversy; that he delivered it to Sharick, and got from him the pitcher, and that he then had no money in bank to meet it; and, at the same time, he gave notice to the prosecution, through his counsel, that he expected to prove that he never made the pretences and representations alleged in the information, but, on the contrary, expressly stated to the prosecuting witness, Sharick, when he delivered the check, that he then had no money in the bank but would have soon, and that the check would then be paid; and he so testified in his own behalf, and his testimony was corroborated by other witnesses. There was, therefore, really but one question for the jury to determine, and that was whether the defendant did or did not make the statements imputed to him, and hence all of the evidence in regard to the giving of other checks was absolutely foreign to the case, and therefore inadmissible upon any theory or rule of evidence.

In his closing address to the jury the prosecuting attorney made the following statements: "He" (referring to the defendant), "stands impeached by the testimony of others—the very best business men of this city who have likewise suffered by his transactions." "Yes, gentlemen of the jury, he wanted to float another of his own checks — and he floated it." "Now, here is a check dated October 2, and another one September 27, another December 31, and another one the same day — two of them on the same day — August 26 — September 19. Now, of course, I don't know how many more checks there are floating around

here like that." To these remarks the defendant objected and requested the court to state to the jury that they were improper, and should be disregarded. The court refused the request, and the defendant excepted. It appears from the bill of exceptions that the prosecuting attorney also made this statement to the jury: "The defense wants you to believe that this man Sharick put up a job on Bokien, the defendant, looking as he does. Just look at him;" and when the defendant's counsel objected, continued, "I don't wonder they object to a statement as to how Bokien looks."

While it is conceded by counsel for the defendant that the control of the argument of counsel is largely within the discretion of the trial court, it is insisted that, in this instance, not only the prosecuting attorney overstepped the limits of fair debate, but that the court abused its discretion to defendant's prejudice, in refusing the request to direct the jury to disregard the remarks above set forth. In presenting his case to the jury counsel has a right to indulge in the utmost freedom of speech consistent with the facts in evidence, but he has no right to travel out of the record and base his argument on facts not appearing in evidence, or to prejudice the jury against a party or a witness by commenting on facts not pertinent to the case and outside of the proof; and whenever counsel undertake to pursue such a course, it is the duty of the court, upon the request of opposing counsel, to interfere and correct such abuse of the privilege of advocacy. But even improper statements by counsel to the jury will afford no ground for a new trial unless they are of such a nature that they are calculated to influence the jury to the prejudice of the party complaining. Exaggerated statements and hasty observations are often made in the heat of debate, which

though not legitimate are disregarded by the court because, in its opinion, they are harmless; but when counsel in his argument states a material fact concerning which there is no testimony, the burden is cast upon him to show that no prejudice resulted therefrom to the party objecting, for in such cases prejudice will be presumed. *Nelson v. Welch,* 115 Ind. 270 (16 N. E. 634); *Troyer v. State,* 115 Ind. 331 (17 N. E. 569).

But it does not appear to us that the remarks of the prosecuting attorney here complained of were wholly irrelevant, or entirely beyond the limits of the privilege of counsel. Those with regard to the different checks were based on evidence admitted by the court. The substantial ground of complaint was the ruling of the court permitting the checks to be introduced in evidence, rather than the remarks relative thereto by counsel. It is especially claimed, however, that the comments of the prosecuting attorney with reference to the personal appearance of the defendant, not as a witness, nor his manner and bearing as such, but as an accused person before the court, were of such a character as to degrade him before the jury, and thereby unjustly prejudice his case.

In *Bessette v. State,* 101 Ind. 85, cited by defendant, the supreme court of Indiana observed that:

"When the prosecutor . . . went so far outside of the circle of fair debate as to attempt to degrade and humiliate the defendant, by arraigning him for his personal appearance and characteristics while he was by the compulsion of the court at its bar, it was the duty of the court to interfere for his protection."

In that case the prosecuting attorney undoubtedly "went outside of the circle of fair debate" when he said to the jury,

27—14 WASH.

"Luke Bessette has a bad looking face; I ask you to just look at his face; you have a right to look at his face, and I have the right to ask you to look at his face, and as prosecuting attorney I have a right to comment upon it; if his face does not show him to be a bad man, then I am not a good judge of the human countenance."

His conduct was clearly reprehensible and inexcusable, and justly merited the rebuke of the court; for he, in effect, argued to the jury that the defendant was a bad man, and presumably guilty, because he had a bad looking face. The remarks of the prosecuting attorney in this case, with reference to the appearance of the defendant, though not strictly proper, were by no means similar in character or import to those considered by the court in the Indiana case above mentioned, and we are not convinced that they worked any prejudice to the rights of defendant. The jury, no doubt, understood that what was said was intended simply as a humorous refutation of the claim of the defense that the prosecuting witness had "put up a job" on the defendant, and were in no way influenced or misled thereby. If counsel had said directly, or by implication, that appellant looked guilty, or looked like a bad man, a different case would have been presented.

We see no objection to the form of the verdict. It was simply "guilty," and was therefore strictly in accordance with the provisions of the code (Code Proc., § 1325).

The judgment is reversed and the cause remanded for a new trial.

GORDON, J., concurs.

DUNBAR, J., concurs in the result.

HOYT, C. J., dissents.