133   135
135   488

STATE OF IOWA v. FRANK WATERBURY, Appellant.

**Uttering forged instrument:** INDICTMENT: PROOF: VARIANCE. An
1  indictment for uttering a forged check with indorsements is
   not supported by proof that one of the indorsements was af-
   fixed after the check was uttered.

**Indictment:** ALLEGATION OF KNOWLEDGE. An allegation that de-
2  fendant "knowingly uttered as true a false and forged check
   with intent to defraud" is equivalent to the phrase "knowing
   the same to be false," as used in Code, section 4854.

**Same:** SUFFICIENCY OF PROOF. Knowledge is an essential element
3  of the crime of uttering a forged instrument, and the mere
   fact that a defendant had a check in his possession purport-
   ing to be indorsed by a payee other than himself, the title to
   which would pass upon delivery, is not sufficient to support a
   conviction.

**Witnesses:** PREJUDICE. Where objection to a prosecuting attor-
4  ney as a witness in a criminal case is sustained when he is
   called no prejudice can result.

**Same.** The question of whether prejudice arises from the course
5  pursued in the examination of a witness is largely a matter for
   the trial court to determine and seldom does a case arise call-
   ing for a reversal of its conclusion.

**Argument of counsel.** Where the identity of a defendant is an
6  issue, reference in argument by the prosecuting attorney to the
   salient facial characteristics of different individuals is not er-
   roneous, even though there is no reference to the subject in
   the evidence.

*Appeal from Linn District Court.*— HON. J. H. PRESTON,
Judge.

FRIDAY, JANUARY 18, 1907.

THE defendant was convicted of having knowingly ut-
tered a forged check, and appeals.— *Reversed.*

*Chas. W. Mullan,* Attorney-General, and *Lawrence De
Graff,* Assistant Attorney-General, for the State.

*Tom H. Milner,* for appellant.

LADD, J.— The accused was charged in the indictment with knowingly uttering a check of $10.80, purporting to have been signed by C. L. Besler, with indorsements thereon — " F. Miller " and " Jos. Campaigne." It appeared from the evidence that some one purchased a dozen bananas of a person bearing the name last mentioned, and delivered this check in payment, receiving the difference in money, and that thereafter the name of Campaigne was indorsed thereon in presenting it to the bank for payment. Does the fact that the name was not on the check when uttered, as alleged, constitute a fatal variance in the proof? The check was a complete instrument without the indorsements. These formed no part of it, but were distinct contracts. For this reason it is unnecessary in charging forgery, unless predicated upon the indorsements, that these, when made by the accused or other persons, be alleged or proven. *Bader v. State,* Tex. Cr. App. (69 S. W. 506); *Perkins v. Com.,* 7 Grat. (Va.) 651 (56 Am. Dec. 123); *Miller v. People,* 52 N. Y. 304 (11 Am. Rep. 706); *Commonwealth v. Adams,* 7 Metc. (Mass.) 50; *State v. Yerger,* 86 Mo. 33; 19 Cyc. 1402.

The same rule does not obtain when the charge is uttering a forged instrument. The indorsements, though separate, are not independent contracts. Like the Chameleon, **1. UTTERING FORGED IN-STRUMENT: indictment: proof: variance.** they take on the hue of the thing with which they are connected, operating as an assurance of payment and a transfer of title. *Patterson v. Poindexter,* 6 Watts & S. (Pa.) 227 (4 Am. Dec. 554). The indorsement affects the relation of the parties by substituting another as payee for the one named in the instrument, so that uttering an instrument indorsed is passing and publishing an obligation to a person other than named in the original undertaking with contingent obligations of the indorsers annexed. The rule is universal that, if an

instrument alleged to have been uttered is set out in the indictment, it must be proven as alleged. This is essential to establish the identity of the offense as described. It may be that the insertion of the name of Campaigne as an indorser was through inadvertence. This does not eliminate it as a part of the description of the instrument charged to have been uttered, however, and the fact that some one has blundered will not warrant the courts in departing from the elementary rules of criminal procedure. The proof did not conform to the averments of the indictment, and therefore there should not have been a conviction.

II. The indictment charges that the defendant did " knowingly utter and publish and tender in payment as true the false and forged check with intent to defraud." This is said not to be equivalent to using the phrase " knowing the same to be false," as found in the statute defining the crime. See section 4854, Code. The words " knowingly " or " well knowing " are uniformly held to supply the place of a positive averment in the indictment that the defendant knew the facts subsequently stated. 1 Bish. Crim. Proc. section 504; 18 Am. & Eng. Ency. of Law (2d Ed.) 65, and notes; *State v. Williams,* 139 Ind. 43 (38 N. E. 339, 45 Am. St. Rep. 255).

2. INDICTMENT: allegation of knowledge.

III. It was conceded that the check was not genuine, but appellant contends that the evidence failed to show that this was known to him. At first Campaigne refused to receive it because he did not know the defendant. The latter then called his attention to the signature, and asked if Besler was not good. Thereupon Campaigne responded that he was, and directed his son to cash the check. This was all the evidence bearing on the issue of knowledge or the intent to defraud. An intent to defraud may be inferred from knowingly passing an instrument as true which is known to be false. *State v. Beasley,* 84 Iowa, 83. And such knowledge may be inferred from the possession or utterance of a forged paper in which the

3. SAME: sufficiency of proof.

person in possession or uttering the same is the payee or beneficiary. The rule requiring the State to establish guilt beyond reasonable doubt is founded upon the jealousy with which the law shields the rights of the citizen in order to avoid the danger of injustice, but it has never been held to deny that due effect should be given in the trial of criminal cases to those natural and reasonable presumptions which obtain in other investigations. Thus, in prosecutions for larceny and burglary, the presumption of guilt arising from the possession of property recently stolen is resorted to, not alone owing to the difficulty of direct proof, but because universal experience has demonstrated that rarely have the innocent suffered therefrom. It has proven indispensable to the promotion of justice and the prosecution of crime. It merely requires the accused to account for his possession, a fact peculiarly within his own knowledge. If innocent, he should be anxious to exculpate himself from blame. If he remains silent or furnishes an unreasonable explanation, the presumption, as it rests on his ability easily to account for the manner in which he acquired possession and his failure to do so, is strengthened, and is such evidence of guilt as will sustain a verdict. *State v. Brady,* 121 Iowa, 561.

The possession of the fruits of crime have with equal propriety and as good reason given rise to the like presumption in prosecutions for forgery. The principle was clearly stated in the early case of *State v. Collins,* 14 N. C. 122, where it was said that " being in possession of the forged order drawn in his own favor were facts constituting complete proof that either by himself or by false conspiracy with others he forged or assented to the forgery of the instrument — that he either did the act or caused it to be done — until he showed the actual perpetrator, and that he himself was not privy. It is very different from having a counterfeit bank note. That is an instrument current in its nature and use, and will come innocently to one's hands. But it is next to impossible that the defendant could get possession of such

an instrument as this, purporting to be for his own benefit without having fabricated or aided in the fabrication of it. If the instrument be a forgery, he who holds it under such circumstances is taken to be the forger, unless he shows the contrary." To the same effect, see *Hobbs v. State,* 75 Ala. 1; *State v. Williams,* 152 Mo. 115 (53 S. W. 424, 75 Am. St. Rep. 441); *State v. Peterson,* 128 N. C. 556 (40 S. E. 9, 85 Am. St. Rep. 756); *State v. Allen,* 116 Mo. 548 (22 S. W. 792); *U. S. v. Britton,* 2 Mason, 465, Fed. Cas. No. 14,650; *State v. Yerger,* 86 Mo. 33; *State v. Morgan,* 35 La. Ann. 293; 4 Elliott, Ev. section 2484. Bishop, in referring to the current of American authorities, says: "They seem to indicate that generally the possession of forged paper, or, at all events, the uttering, if in the county where the indictment is found, is cogent evidence to be addressed to the jury that the forgery of the paper was committed by the defendant in the same county." 2 Bishop, Criminal Proc. section 433. Touching the same point, Wharton says: "In larceny this presumption [of innocence] is overcome by proof that the possession is so recent that it becomes difficult to conceive how the defendant could have gotten the property without being in some way concerned in the stealing. So it is with uttering. The uttering may be so closely connected in or with the forging the utterer may be proven to have such capacity for forging or such close connection with the forgers that it becomes, when so shown, probable proof of complicity in the forgery."

*In Commonwealth v. Talbot,* 2 Allen (Mass.) 161, the defendant was accused of uttering and also of forging a receipt in full, and an instruction that the possession of it by a person claiming under it or seeking to derive a benefit from it was strong evidence tending to show that he made the false signature or caused it to be made was approved. But this inference ought not to be drawn from the naked fact of uttering a false negotiable instrument as true when the payee named therein does not purport to be the person

charged with uttering and it appears to have been indorsed by such payee in blank. Title to such an instrument passes by delivery, and one not familiar with the signatures might acquire possession without any benefit resulting and consistently with entire innocence. Should a person receiving such a check or draft or note, subsequently discovered to be forged, be presumed guilty of a heinous crime? Something more is essential to such a result, as proof of statements of the accused in passing the instrument, or of his connection with other forgeries, or that he pretended to be the payee when he was not, or that he passed the instrument under an assumed name. Here the person passing the check asserted nothing save by the act of paying for the bananas purchased with it, and calling attention to the name of purported maker, neither of which acts is so inconsistent with innocence that guilty knowledge of the falsity of the instrument should be inferred therefrom. In *Miller v. State,* 51 Ind. 405, the defendant was charged with forging the name of one Mullen upon the back of the draft, and also with having uttered the instrument with such forged indorsement, and an instruction saying that upon the utterance of the draft with the forged indorsement thereon the presumption arose that the defendant forged the same, unless his possession was explained, was held erroneous on the ground that being indorsed by the payee in blank the draft would pass upon delivery so as to vest title in each successive holder without further indorsement. Scienter is a necessary element of this crime, and the mere fact that the defendant had in his possession a check, purporting to be indorsed by a payee other than himself, and the title to which would pass upon delivery, was not alone sufficient to justify his conviction.

IV. The issue as to the identification of the accused as the person who passed the check was for the jury, and the

4. WITNESSES: prejudice.

evidence was such that we are not inclined to interfere with its conclusion. The appearance of another attorney to interrogate the county attorney

was acquiesced in by counsel for appellant, and no prejudice could have resulted from tendering him as a witness, as the objection to him as such was promptly sustained. The application for leave to examine him and hearing thereof occurred in the absence of the jury, so what counsel is pleased to denominate "Watkin's mad rush" could have accomplished no more than disturb the serenity of his adversary.

In the course of the examination of one Merril, it developed that his daughter was to have been married to defendant on the day of his arrest. On cross-examination the county attorney inquired, "Has your daughter got a child?" This was objected to as immaterial and asked with the purpose of prejudicing defendant. The county attorney responded "That is all," and there was no ruling or answer. The conduct of the attorney in making this inquiry was reprehensible and inconsistent with any proper conception of the prosecutor's duties to fairly try the issues involving the prisoner's liberty, and should have met the stern reproof of the presiding judge. Whether such conduct worked prejudice, however, was peculiarly within the knowledge of the trial court, and seldom will a case arise calling for a reversal of its conclusion. In view of its decision, we cannot say that defendant was prejudiced by the inquiry. *State v. Beal,* 94 Iowa, 39; *State v. Tippet,* 94 Iowa, 646, 650.

5. SAME.

V. In the closing argument the county attorney, after observing that men are distinguished from one another by the set of their eyes, their eyelashes, eyebrows, the features of the face, the set of the nose and chin, and that some are more easily recognized than others, directed the jury's attention to the deep-set eyes of defendant and to his face. As his identity as the person who passed the forged check was in issue, the argument was legitimate. True, neither Campaigne nor his son had mentioned either his face or eyes as enabling them to recognize him, but they had pointed to him as the man, and, even

6. ARGUMENT OF COUNSEL.

though his eyelashes had more strongly impressed the boy, he undoubtedly meant that he recalled the accused by these in connection with other features.  See *State v. Bokien,* 14 Wash. 403 (44 Pac. 889); *Inman v. State,* 72 Ga. 269; *People v. Wheeler,* 65 Cal. 77 (2 Pac. 892).— *Reversed.*