O’Hara, J.
The defendant, Isaac E. Huffman, was indicted by the grand jury of Franklin county for accepting a bribe while a member of the senate of the state of Ohio. During the trial in the court of common pleas certain questions were raised as to the proper method of examining prospective jurors, and also as to the admission and exclusion of evidence, which were, decided adversely to the state. Thereupon exceptions to these rulings were taken by the attorney general and prosecuting attorney, and filed in this court by leave, under Sections 13681 et seq. of the' General Code, in order to have the law determined for similar cases.
The state claims that the trial court erred in permitting the defendant to inquire of each juror upon his voir dire whether he would stand upon his opinion of not guilty, formed after due deliberation, or would yield his opinion merely for the purpose of reaching a verdict in the case. The *234 point raised is fairly shown by the following questions which were put to one of the jurors, with his answers thereto:
“Q. Suppose that you are accepted as a juror in this case, you hear all the evidence and the arguments of the attorneys on both sides, and the charge of the court, and then you retire to your jury room, and when you reach your jury room you have a doubt, a reasonable doubt, in your mind that the defendant is guilty, and that you argue the case and hear the arguments of your fellow jurors, and that you still have that reasonable doubt of his guilt? A. Yes, sir.
“Q. I want to know whether or not you will stand by your honest conviction and hand a verdict of not guilty, or whether you will yield your own conviction merely for the purpose of reaching a verdict in this case. Just think that over and tell the court how you feel about it. A. I will istand to my own opinion; to my honest conviction.”
It is contended on behalf of the state that the purpose of this examination is to give a juror the idea that, should he form- an opinion of not guilty after hearing the evidence and arguments and after deliberation in the jury room, he must not upon further deliberation yield to the opinion of his fellow jurors, and that this tends to coach a juror to obstinacy of opinion and promotes the chances of a disagreement. The defendant contends that such questions are proper because he is entitled to the unanimous verdict of the jurors and to the benefit of every reasonable doubt; also that he is entitled to know the mental attitude and firmness *235 of prospective jurors, in order that he may be better able to protect his rights in the selection of the jury.
The object of the examination of persons called to act as jurors is to determine whether or not they are qualified to sit in the trial, and for this purpose a rigid examination is allowed before their acceptance by the parties to the cause.
Our statutes have prescribed certain grounds which justify challenging for cause, and the courts have been liberal in permitting investigation to be made in order to ascertain whether any of them exist.
But it will be found that the grounds which are thus recognized are only those existing at the time of the examination, such as the citizenship of the jurors or similar legal requirements; their relationship to the parties or the cause; their opinions and prejudices, or any other facts that show the actual disposition of their minds toward the parties or the subject-matter of the action.
It is not proper, however, to submit hypothetical questions to the jurors in an effort to learn in advance what they will do in a supposed state bf the evidence or upon a supposed state of facts, and thus possibly commit them to certain ideas or views when the case shall be finally submitted to them for their decision. State v. Bokien, 14 Wash., 403; Commonwealth v. Van Horn, 188 Pa St., 143; People v. Warner, 147 Cal., 546; Hughes v. State, 109 Wis., 398; Thompson on Trials (2 ed.), Sec. 102.
With reference to the unanimity of verdict and the adherence of each juror' to his own convictions, *236 the observations of Mr. Justice Brown in a homicide case, sustaining a charge to the following effect, are'in point: “While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment; or, that he should close his ears to the arguments of men who are equally honest and intelligent as himself.” Allen v. United States, 164 U. S., 492, at page 501. The jury in criminal cases should be, and undoubtedly always is, carefully cautioned by the court to consider the evidence and render its verdict according to established rules of law, one of which is that it must be convinced from the testimony that the crime charged has been proven beyond all reasonable doubt before it can find the defendant guilty. It would therefore seem that the proper safeguards have been preserved when fair and impartial jurors have been secured to try the issue, and that it can serve no good purpose to confuse their minds in advance with matters that should only be considered by *237 them wñen in the jury room after having received full instructions from the court.
We think the court erred in permitting the above and similar questions to be asked of the jurors, and this exception will therefore be sustained.
The state also excepted to the ruling of the trial court that a prima facie case of conspiracy had not been made out by the state between Rodney J. Diegle, George K. Cetone and the defendant to fix up a story to defeat the prosecution, in consequence whereof the court- refused .to admit the testimony of W. E. Haas as to a conversation with Diegle in reference to such conspiracy.
The defendant Huffman and the said Cetone and Haas were all members of the senate of the state of Ohio in the month of April, 1911, when the alleged bribery is claimed to have taken place, and the said Diegle was sergeant-at-arms of -the senate at the same time.
Indictments had also been found against Cetone and Diegle for bribery, arising out of the same transaction on which the indictment against Huffman was founded. After the state had offered evidence in support of the charge contained in the indictment now under consideration, which tended to show that the defendant Huffman and the said Cetone and Diegle were all connected with and concerned in the alleged act of bribery, it called Senator Haas as a witness, who testified that shortly after the return of the indictments he had separate talks with Huffman, Cetone and Diegle in the senate chamber, on the same day and upon the same matter. He was *238 permitted t'o testify that Huffman twice asked him if he had seen Diegle, and if he (Haas) was coming down to his (Huffman’s) room at the Virginia Hotel. The witness answered that he had seen Diegle, and that he stated he did not know whether or not he would go down to Huffman’s room, but' that he would see.
The state thereupon asked the witness to give his conversation with Diegle which had occurred prior to those with Huffman, but the court sustained an objection to the question and excluded the evidence. The state thereupon offered to prove that, if permitted, the witness would have testified that Diegle asked him to do down to Huffman’s room in order to fix up a story to the effect that Diegle, Huffman and Cetone had arranged to go down to the Chittenden Hotel for the purpose of catching a bribe giver. It appears that the act of bribery charged in the indictment was alleged to have occurred at the Chittenden Hotel, Columbus, in April, 1911, and the state claimed that Huffman, Diegle and Cetone were all implicated in and parties to the transaction.
It is not disputed by the defendant that evidence showing a conspiracy on the part of defendant and others to invent a defense would have been competent. It is claimed, however, to be manifest that the testimony offered, taken in conjunction with that already admitted, was not sufficient to connect Huffman with any such conspiracy and was therefore inadmissible, but this objection goes to its weight rather than its competency. Thp rule is- well settled that direct evidence is not necessary to prove a conspiracy,. but that such proof *239 must generally, from the very nature of the case, be circumstantial.
As has been well said in Gardner v. Preston, 2 Day (Conn.), 205, at page 209: “A combination or conspiracy may be proved, by evincing a concurrent knowledge and approbation in the persons conspiring of each other’s acts; and it is most usually done by proof of the. separate acts of sev-. eral persons, concentrating in the same purpose or particular object. The greater the secrecy that is observed relative to the object of such concurrence, and the more apparent the similarity of the means employed to effect it, the stronger is the evidence of conspiracy.”
The text-writers agree that if it be proved by their conduct that alleged conspirators were pursuing the same object by the same means, each performing a different part of the act with a view to its attainment, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. 3 Greenleaf Evidence (16 ed.), Sec. 93; Wharton Crim. Law (8 ed.), Sec. 1398.
The evidence of Senator Haas with reference to his conversation with Diegle, as shown by the proffer made by the state, taken in connection with his testimony as to his conversations with Huffman and Cetone at practically the same time and place, would certainly tend to show a concerted effort on the part of the three persons in question to undertake to devise or perfect some plan of fabricating a defense to defeat the charges then pending against them all.
It was also claimed on behalf of defendant at the oral argument, that in any event such evidence *240 was not competent as a part of the state’s case in chief. But the fabrication of testimony gives rise to an inference, generally considered and treated as a presumption of fact, against the party guilty of that practice, and from its nature such conduct partakes strongly of the character of an admission against interest. 2 Wharton Crim. Evidence (10 ed.), pages 1412, 1485 et seq., and cases cited. See also Moore v. State, 2 Ohio St., 500. For these reasons we consider that the testimony was properly offered as a part of the case in chief, and should have been admitted. These two exceptions will therefore also be sustained.
Several other exceptions are ur'ged on behalf of the state which we shall briefly consider. It is claimed that the court erred in refusing to sustain for cause the challenge of the state to one juror whose estimate or opinion of the value of testimony given by private detectives was sought upon his voir dire, the state maintaining that his examination showed prejudice against such testimony. But from his entire examination it appeared thqt he was willing to consider it the same as he would all the other evidence, under proper instructions from the court, and that, notwithstanding any possible opinion or prejudice, he stated that he could and would render a fair and impartial verdict according to the law and the evidence, whereupon the court overruled the challenge for cause.
As the trial court who had the juror before it was satisfied with his qualifications, we do not feel that the record shows any abuse of discretion, but that, on the contrary, it comes within the rule laid *241 down in Lindsey v. The State, 69 Ohio St., 215. This exception is therefore overruled.
It is further claimed by the state that the trial court erred in permitting the defendant to inquire of the witness Frank Harrison Smiley, for the purpose of attacking his credibility, if he did not testify as a witness on behalf of the state of Illinois in a certain criminal proceeding, and in requiring Smiley to answer the question. The witness was a private detective called by the state, upon whose evidence the proof of the charge relied upon in the present case largely depended. He admitted that he had been indicted, with others in the state of Illinois for criminal conspiracy to defraud and had pleaded guilty, but the plea was subsequently withdrawn and the proceeding dismissed. The advantages of proper and thorough cross-examination have come to be well recognized, and considerable latitude is allowed, even in civil cases. As has been said by' this court: “The importance of the right of full cross-examination of an adverse witness, can scarcely be overestimated. As a test of the accuracy, truthfulness and credibility of testimony, it is invaluable.” Martin v. Elden, 32 Ohio St., 282, at page 287. The right certainly should not be abridged in criminal cases, involving as they do the liberty, life or honor of a defendant, and in which bitterness of feeling and actual hostility frequently exist on the part of the adverse witnesses. Therefore, in order to arrive at the truth and promote the ends of justice, it has been uniformly held in this state that the limits to which a witness may be cross-examined on matters not relevant to the issue, for the *242 purpose of judging of his character and credit from his own voluntary admissions, rests in the sound discretion of the trial court, and this will not be interfered with unless abused to the prejudice of the party complaining. Wroe v. State, 20 Ohio St., 460; Hanoff v. State, 37 Ohio St., 178.
We feel that the foregoing question and answer do not exceed the legitimate bounds of cross-examination in the present case, and that in permitting them the court acted within its discretion. These exceptions are therefore overruled.
In the same connection, the defendant offered in evidence the record of the above case in Illinois against the witness Smiley, and the objection of the state thereto was overruled and its exception noted. The state contends that the record does not show a conviction within the meaning of Section 13659, General Code, and that it is therefore inadmissible. This contention is borne out by the authorities, and if that were the only purpose in offering the record the objection would be well taken. But as the indictment contained in the record shows the exact offense with which the witness Smiley was charged, and is closely connected with his cross-examination as above indicated, some of the other members of this court are of the opinion that it was properly admitted, and the exception will therefore be overruled.
The last exception on behalf of the state is to the refusal of the trial court to admit in evidence the transcript of the testimony given by certain witnesses at the former trial of this defendant as to the good character and reputation of the witness Smiley for truth and veracity. At the former *243 trial the defendant attacked his character and reputation, and several witnesses from Chicago were called by the state who testified in his favor. At the present trial the defendant made the same attack upon Smiley, and the state, being unable to procure - the attendance of the said witnesses, sought to introduce their testimony given at the former hearing. As no showing was made that any of the witnesses were dead, or that they were absent through the connivance or by the procurement of the defendant, the case comes within the rule laid down in The State v. Wing, 66 Ohio St., 407. The evidence was therefore properly excluded, and the exception will be overruled.
Exceptions 2, 5 and 6 as numbered in the record are sustained, and exceptions 1, 3, 4, 7 and 8 are overruled, and it is so ordered.
Davis, C. J., Spear and Donahue, JJ.,. concur; Shauck, J., concurs as to exceptions sustained. Johnson, J., not participating.