RATLIFF *v.* STATE.

(*Knoxville,* September Term, 1939.)

Opinion filed November 25, 1939.

John R. Todd, Jr., and Howard E. Wilson, Jr., both of Kingsport, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice McKinney delivered the opinion of the Court.

Plaintiff in error has appealed to this court from a conviction for forgery, his term of imprisonment having been fixed at a year and a day in the State penitentiary. It is his contention that the evidence does not support the verdict, the State having failed to prove that he forged the involved instrument as well as an intention to defraud.

The alleged forged check is as follows:

"Kingsport, Tenn., 7-16-1938
"The First National Bank
"Pay to the order of Garland Store $12.00 Twelve dollars  Dollars
"Oscar McMurray"

Oscar McMurray testified that he did not execute said check nor authorize anyone else to sign his name thereto.

Mr. S. F. Dobyns, of the firm of Dobyns-Taylor, a mercantile establishment in Kingsport, testified that one day in July, 1938, plaintiff in error came into his place of business and asked the cashier to cash the above check. Since the check was not endorsed by the payee this witness telephoned to the payee, and upon the information obtained from him had the plaintiff in error arrested immediately after paying him the twelve dollars.

The State offered no direct testimony that the plaintiff in error actually wrote this check or procured some other

person to write it, but relies solely upon the presumption arising from the possession of and an attempt to realize upon this recently forged check.

We quote from the testimony of the plaintiff in error as follows:

"Q. What is your name? A. Buck Ratliff.

"Q. Buck, how old are you? A. Twenty-five.

"Q. Did you write any of this? (Exhibiting check to the witness.) A. I did not.

"Q. Did you see it written? A. No, sir.

"Q. Did you know when it was written? A. No, sir.

"Q. Who gave you the check? A. Isaac Anderson.

"Q. When you saw him in Kingsport did you have him arrested? A. They took me to jail—

"Q. Later on did you have him arrested? A. Yes, sir.

"Q. Did Squire Bradley issue the warrant? A. Yes, sir.

"Q. Who gave you the check? A. Isaac Anderson.

"Q. Did you know anything about the check being forged? A. No, sir.

"Q. Until they called up Mr. Garland? A. No, sir.

"Q. That was the first you knew about it? A. Yes, sir.

"Q. Did he tell you it was forged? A. No, sir.

"Q. Did you know it was forged? A. No, sir.

"Q. What did he ask you to do with it? A. He said for me to go and get this check cashed, that 'I owe Dobyns-Taylor some money,' and I walked in and laid the check on the counter, and the woman looked at the check, and I said that a boy outside give me the check, and she called the bank, and the first thing I knowed—she waited until the law come and handed me $12.00 and the law grabbed it out of my hand.

"Q. Is that the first knowledge you had about the

check? A. The first knowledge I had was when they grabbed me.

"Q. You didn't know anything about it until that time? A. No, sir."

Plaintiff in error gave the following additional testimony on cross-examination:

"Q. Who is this fellow Anderson? A. Isaac Anderson.

"Q. Where does he live? A. He told me he lived on the Bloomingdale Road.

"Q. How long have you known him? A. About a year and a half or two years. . . .

"Q. Where is Anderson now? A. I don't know where he is now. John Martin swore out a warrant for him and they was supposed to prosecute him one day at two o'clock, and he wasn't there to prosecute and George Bradley dismissed the case. . . .

"Q. How many times have you been convicted? A. Two or three times."

Forgery is defined in section 10979 of the Code as follows:

"Forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights."

The offense of forgery is complete by the mere forgery, with the fraudulent intent, whether any third person be actually injured thereby or not. It is sufficient that the instrument forged, with the fraudulent intent, might have been prejudicial to the rights of another. *Tyler* v. *State*, 21 Tenn. (2 Humph.), 36, 37, 36 Am. Dec., 293; *State* v. *Humphries*, 29 Tenn. (10 Humph.), 442; *Hale* v. *State*, 41 Tenn. (1 Cold.), 167, 78 Am. Dec., 488; *State* v. *Ward*, 66 Tenn. (7 Baxt.), 76; *Girdley* v. *State*, 161 Tenn., 177, 29 S. W. (2d), 255.

This court, in *State ex rel. Barnes* v. *Stillwell*, 165

Tenn., 174, 179, 54 S. W. (2d), 978, 979, quoted approvingly the following text in 26 C. J., 903-904: "The second element of the crime of forgery is the knowledge of the falsity of the instrument and the intent to defraud. This is of the very essence of the offense and without proof of it there can be no conviction, in the absence of some statute changing the rule."

The question which we are called upon to determine is whether an attempt to cash a forged check raises a presumption that it was forged by the possessor, or that he procured it to be forged.

The state did not undertake to prove that plaintiff in error forged this check by comparison of hand writing or otherwise, and must have proceeded upon the theory that he falsely conspired with or procured another to forge it.

Counsel for the state relies upon the following text from 26 C. J., 961:

"Possession of a forged paper by accused with a claim of title thereunder, if unexplained, raises a conclusive presumption that he forged it, or procured it to be forged, and this is so, although the instrument is payable to accused or bearer."

In the cases supporting the foregoing text the courts seem to emphasize the fact that the possessor of the forged instrument asserts "a claim of title thereto." For example, in *Hobbs* v. *State*, 75 Ala., 1, 6, the court said: "One found in the possession of a forged instrument of which he purports to be the beneficiary, and applying it to his own uses, must, in the absence of explanation, be presumed to have fabricated it, or to have been privy to its fabrication."

In *State* v. *Waterbury*, 133 Iowa, 135, 137, 110 N. W., 328, 329, especially relied upon by the state, it was said:

"An intent to defraud may be inferred from knowingly passing an instrument as true which is known to be false. *State* v. *Beasley*, 84 Iowa, 83, 50 N. W., 570. And such knowledge may be inferred from the possession or utterance of a forged paper in which the person in possession or uttering the same is the payee or beneficiary."

In *State* v. *Britt*, 14 N. C., 122, 125, the rule was announced in this language: "That the order was not in the hand-writing of the defendant did not rebut the legal presumption of his guilt. Being in possession of the forged order, drawn in his own favor, were facts constituting complete proof, that either by himself or by false conspiracy with others, he forged or assented to the forgery of the instrument. . . . But it is next to impossible that the defendant could get possession of such an instrument as this, purporting to be for his own benefit, without having fabricated, or aided in the fabrication of it."

Other cases to the same effect could be cited.

In the instant case, however, the check was not drawn in favor of the accused, and he did not claim to be the owner or beneficiary thereof, but stated to the cashier "that a boy outside gave me the check." This statement is not contradicted.

In *State* v. *Waterbury*, *supra*, the accused was convicted for having knowingly uttered a forged check. The check was for $10.80, payable to F. Miller, endorsed "F. Miller," and purported to have been signed by C. L. Besler. The accused, Waterbury, purchased some bananas from the prosecutor, and tendered this check in payment, receiving the difference in money. It was conceded that the check was a forgery. The judgment below was reversed, the court saying:

"In *Commonwealth* v. *Talbot*, 2 Allen (Mass.), 161,

the defendant was accused of uttering and also of forging a receipt in full, and an instruction that the possession of it by a person claiming under it or seeking to derive a benefit from it was strong evidence tending to show that he made the false signature or caused it to be made was approved. But this inference ought not to be drawn from the naked fact of uttering a false negotiable instrument as true when the payee named therein does not purport to be the person charged with uttering and it appears to have been indorsed by such payee in blank. Title to such an instrument passes by delivery, and one not familiar with the signatures might acquire possession without any benefit resulting and consistently with entire innocence. Should a person receiving such a check or draft or note, subsequently discovered to be forged, be presumed guilty of a heinous crime? Something more is essential to such a result, as proof of statements of the accused in passing the instrument, or of his connection with other forgeries, or that he pretended to be the payee when he was not, or that he passed the instrument under an assumed name. Here the person passing the check asserted nothing save by the act of paying for the bananas purchased with it, and calling attention to the name of purported maker, neither of which acts is so inconsistent with innocence that guilty knowledge of the falsity of the instrument should be inferred therefrom. In *Miller* v. *State*, 51 Ind., 405, the defendant was charged with forging the name of one Mullen upon the back of the draft, and also with having uttered the instrument with such forged indorsement, and an instruction saying that upon the utterance of the draft with the forged indorsement thereon the presumption arose that the defendant forged the same, unless his possession was explained, was held erroneous on the

ground that being indorsed by the payee in blank the draft would pass upon delivery so as to vest title in each successive holder without further indorsement. Scienter is a necessary element of this crime, and the mere fact that the defendant had in his possession a check, purporting to be indorsed by a payee other than himself, and the title to which would pass upon delivery was not alone sufficient to justify his conviction."

While the Waterbury and the Miller cases are not exactly in point, they more nearly accord with the case on trial than any other we have found. They are similar in that (1) the payee named therein does not purport to be the person charged with forging or uttering it, (2) the accused did not claim to be the payee named therein; (3) he did not attempt to dispose of the instrument under an assumed name; (4) there is no proof of his connection with other forgeries; (5) there is no evidence of false statements by the accused at the time he sought to cash the check; on the other hand, he stated to the cashier that another boy had asked him to get the money on the check.

In the Waterbury, Miller, and other cases referred to the defendants did not testify, while in this case the accused did testify, relating the circum stances of his possession of the check, the name and residence of the boy who procured him to cash it, the subsequent arrest of this boy, and positively denied that he forged the check, procured it to be forged, or knew that it was forged. The accused was not involved in any material contradictions on the witness stand, and the state did not offer any evidence to impeach his testimony.

While the accused admits that he has been convicted two or three times, it does not appear for what offenses.

They may have been misdemeanors or felonies not rendering him infamous.

Taking the record in its entirety, we are of the opinion that any presumption arising from the possession and cashing of this forged check is overcome by the facts and circumstances referred to herein, and the direct testimony of the accused denying any complicity in this crime.

For the reasons stated the judgment is reversed and the case remanded for a new trial.