[No. 6073. Decided February 19, 1906.]

THE STATE OF WASHINGTON, *Respondent,* v.
B. OPPENHEIMER, *Appellant.*[1]

CRIMINAL LAW—OBTAINING MONEY UNDER FALSE PRETENSES—EVIDENCE—PROOF OF OTHER CRIMES. Upon a charge of obtaining money upon false pretenses by means of making a collection, upon a day named, falsely representing that the accused was an agent of the prosecuting witness and authorized to collect his accounts, evidence of similar collections from other parties under similar fraudulent pretenses, is inadmissible for the purpose of showing intent, or for any purpose, where there is nothing unusual or extraordinary in the means employed and no connection between the collections made.

SAME—DEFENSES—ADVICE OF ATTORNEY. Upon a prosecution for obtaining money under false pretenses, it is competent for the defendant to prove that he had collected money as agent for the prosecuting witness under the advice of an attorney, believing that he had the right to do so, but only when it appears that the advice was given after a full and fair statement of all the facts, made in good faith.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered October 15, 1905, upon a trial and conviction of the crime of obtaining money under false pretenses. Reversed.

[1]Reported in 84 Pac. 588.

*W. H. Abel,* for appellant.

*E. E. Boner* and *J. C. Cross,* for respondent.

RUDKIN, J.—The defendant was informed against in the court below for the crime of obtaining money under false pretenses. The substance of the charge was that, on the 11th day of July, 1905, the defendant obtained from the Grays Harbor Oyster Company the sum of $1.50, by falsely and fraudulently representing and pretending that he was the agent and in the employ of one Carney, and was duly authorized to collect said amount. The defendant was convicted, and prosecutes this appeal from the final judgment of the court.

It appears from the testimony that some time during the month of May, 1905, the prosecuting witness, Carney, who published the Aberdeen Herald and ran a printery in connection therewith, made arrangements with the proprietors of the Anheuser Music Hall for the printing of their programs. Carney was to print the programs at his own expense, but received as compensation for his services the fees for all advertisements printed in connection therewith. Carney entered into an agreement with the appellant, whereby the appellant was to solicit advertisements for the program and receive for his services one-half the fees for all advertisements which he might procure. Carney, as a witness for the state, testified that the advertising fees amounted to the sum of $60 in all, and that he paid the appellant his half thereof, $10 by check and $20 on an order given by the appellant. He was then asked the following question:

"I will ask you whether or not, about the 22d day of May, 1905, or just prior thereto, you had any conversation with Mr. Oppenheimer in relation to his assuming to collect your money."

To this question the appellant objected unless the answer was confined to the particular collection mentioned in the information. The objection was overruled and the witness detailed the conversation as follows:

"I had just started out to collect my bills on the program, from the office. Oppenheimer came .to me and wanted me to go back to the office. I told him I was in. a hurry, but he persisted, and I walked back there with him. When he got in there he informed me that he had gotten into serious trouble and had to have some money, and that he had collected some money on the program— Mr. Shields: Defendant objects, and asks that this statement that Mr. Carney has made already be stricken and the jury instructed not to regard it, for the reason—I don't know whether or not I care to state my reason in length—Carney and Oppenheimer have had trouble here for six or eight months. Now, your Honor, that is the reason for objecting to these conversations. If it relates to the particular crime, I will not have any objection. Court: That is what he is stating. Proceed. [Answer continued] He informed me that he had the day before collected some payments on that program. He gave me the names of the parties and the amount obtained from each, which figured $17.50. I said, 'Oppenheimer, you may have been in trouble yesterday, but you are in bigger trouble today unless you dig that money up.' He agreed to get that money by five o'clock that evening. That is the extent of that conversation."

The witness further testified that the appellant made other collections after said conversation, to the amount of $18, $16.50 of which was from parties other than the Grays Harbor Oyster Company. The admission of this testimony is assigned as error.

Testimony as to the admissions or confessions of June 2 might have had a bearing on the question of the appellant's authority to make collections on account of program advertisements at some stage of the trial, had the appellant asserted or relied upon an authority conferred or existing before such earlier collections were made; but the testimony was not admitted for that purpose, nor does the respondent attempt to sustain the ruling of the court on any such ground. The respondent takes the broad position that testimony as to any and all collections made by the appellant on account of the program advertisements, whensoever and from whomsoever made, was competent as bearing upon the question of

intent, and the court below so ruled. This ruling was error, under the decision of this court in *State v. Bokien,* 14 Wash. 403, 44 Pac. 889. The defendant in that case was accused of obtaining money under false pretenses by giving a check on a bank in which he had no funds. The court admitted testimony tending to show that the defendant had given checks to various other parties, seven in number, shortly before the giving of the check in controversy, all of which were not paid for want of funds. This court, in reversing the judgment, said:

"The evidence was not competent to prove the intent of the defendant in the particular transaction mentioned in the information, for the reason that it would not logically or legitimately follow that he intended to defraud Sharick because he had defrauded other parties at various times previously. It was not competent for the purpose of showing defendant's motive, for that, as well as his intent, would be inferred from his acts. The question of mistake was not involved in the case, and the previous transactions of the defendant, which were permitted to be shown, no more formed a part of a single scheme than the several larcenies of a thief (*State v. Kelley,* 65 Vt. 531, 36 Am. St. Rep. 884, 27 Atl. 203) ; and it certainly would not be competent in order to show that one had stolen certain property to prove that he had committed larceny at a previous time. The evidence as to these checks which were not mentioned in the information must have been greatly prejudicial to the defendant, for it in effect compelled him, without previous notice, to acquit himself of at least seven distinct offenses in addition to the one with which he was directly charged."

In *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523, the court reaffirmed the *Bokien* case, and in both cases cited with approval *Commonwealth v. Jackson,* 132 Mass. 16, where it was held that, on the trial of an indictment for obtaining the property of another under false pretenses in the sale of a horse, evidence of similar false pretenses in sales to other parties shortly before the sale in question was inadmissible on the question of intent. The Massachusetts court alludes

to the harmful effect of such testimony, and expresses a doubt as to whether the exception to the general rule of law should be further extended.

In *Regina v. Holt,* 8 Cox C. C. 411, the prisoner was charged with obtaining a specific sum of money from one Hirst by false pretenses. It appeared that he was employed by his master to take orders, but not to receive moneys, and indeed was forbidden so to do, and he was proved to have obtained the sum from Hirst by representing that he was authorized by his master to receive it. Evidence was admitted of his having, within a week from the above obtaining, obtained another sum of money from another person by a similar false pretense, such obtaining not being in any way mentioned in the indictment. It was held by the court of criminal appeals that such evidence was not admissible for the purpose of proving the intent of the prisoner when he committed the act charged in the indictment, and that the conviction should be quashed.

These cases are not distinguishable from the case at bar. In the *Bokien* case the defendant obtained money or property from various persons by means of the same false representation, viz., that he had money in bank subject to check; in the *Jackson* case the defendant obtained money or property from various persons by means of similar false pretenses in the sale of horses; and in the *Holt* case the defendant obtained money from various persons by falsely representing that he had authority from his master to make the collections, just as in this case.

The respondent attempts to distinguish this case from the cases we have cited, under the rule announced by this court in *State v. Pittam,* 32 Wash. 137, 72 Pac. 1042. In that case the defendant was accused of the embezzlement of the sum of $150 belonging to his employer. The defendant admitted the receipt of the money, but disclaimed any intention to misappropriate it. The state was permitted to prove that the defendant, who was the agent and cashier of a corporation,

had given receipts to various patrons of the corporation, and
made entries in the books for less than the amounts received,
just as he had done in the instance of the $150 mentioned in
the charge against him.   This court affirmed the judgment,
holding "that the evidence tended to prove a system or scheme
on the part of the defendant to defraud the corporation by
embezzling its funds." That case falls within a recognized
exception to the general rule that testimony tending to prove
the commission of other crimes is not competent on the trial
of a criminal charge. It is not easy to say in every case
whether such a system or scheme has been established as will
render proof of other like crimes competent; but the rule
should not be extended to include cases where nothing fur-
ther is shown than that the defendant obtained money from
various parties by means of a similar false pretense, unless
there is something unusual or extraordinary in the means em-
ployed. There was no such connection between the different
collections made by the appellant as to render proof of all
such collections competent on the trial of this information.
For this error the judgment must be reversed.

In view of a retrial of the case, we will briefly consider the
other errors assigned. The appellant contends that he should
have been permitted to prove that he collected the money
mentioned in the information under the advice of his attor-
ney. It would doubtless have been competent for the appel-
lant to prove that he collected the money in good faith, be-
lieving that he had a right so to do, and that in making the
collection he was acting under the advice given by his attorney
after a fair and full statement of all the facts. But the offer
of the appellant fell far short of these requirements. He
simply offered to show by his attorney that the attorney had
advised him to collect the money. Whether the advice was
given after a full and fair statement of all the facts or was
acted upon in good faith, or at all, does not appear. The
showing was wholly insufficient, and the offer was properly
rejected. The Deming letter and the Freeland check do not

seem to have any relevancy on the trial of this case, and should have been excluded, though their admission would seem to have been harmless error.

For the error in the admission of testimony the judgment is reversed, and a new trial ordered.

HADLEY, CROW, DUNBAR, and ROOT, JJ., concur.