[No. 8884.   Department One.   January 3, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK LEROY,
*Appellant*.[1]

JURY—DRAWING—TIME FOR SERVICE—CHALLENGE TO PANEL. The
requirement that a jury be drawn for "the ensuing month," is not
so material as to invalidate a panel part of whom were drawn for
the month of December, but not summoned until January, because
there was no jury business for the month of December, in view of
Rem. & Bal. Code, § 2140, providing that challenges to the panel shall
only be allowed for a material departure from the prescribed forms
(PARKER, J., dissenting).

CRIMINAL LAW—APPEAL—RECORD. Comment on the facts pending
a motion to quash the jury panel cannot be assigned as error, when
the jury had not been called to the box and the record does not
show that any juror was present.

CONTINUANCE—DILIGENCE. A continuance is properly denied in
a criminal case where the accused took no steps to secure a subpoena
for witnesses until more than a month after the case was set for

[1]Reported in 112 Pac. 635.

trial, and the only diligence shown to secure witnesses living at a distance was the writing of letters a few days before the trial, with no excuse for the delay.

APPEAL—REVIEW—HARMLESS ERROR. It is not prejudicial error to refuse to strike out an immaterial opinion of a witness.

CRIMINAL LAW—EVIDENCE—IDENTITY. In a prosecution for burglary, in which a witness testified that the accused was wearing the witness' shoes, evidence that the witness had tried on and could wear the shoes identified as shoes left by the accused is admissible.

SAME. In a prosecution for burglary, evidence that an unidentified man was met at a certain place, and concealed himself, is admissible, where it appears from other evidence that the accused went in that direction, and where the incident, with other evidence, was a circumstance tending to connect him with the crime charged.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be predicated upon an immaterial statement of a witness as to trivial incidents which did not reach the dignity of evidence.

CRIMINAL LAW—EVIDENCE—OTHER CRIMES. Upon a prosecution of burglary, evidence of another burglary in the vicinity about the same time, and that articles then stolen, with burglar's tools, were found on the person of the accused, who was arrested shortly after taking a stage ride from that locality, is admissible to show that accused was in the vicinity and had opportunity to commit the crime.

CRIMINAL LAW—EVIDENCE—ESCAPE. Evidence of the accused's escape and recapture by the sheriff is admissible as a circumstance tending to show guilt.

BURGLARY—SECOND DEGREE—ELEMENTS OF OFFENSE. Under Rem. & Bal. Code, § 2579, defining burglary in the second degree as an entry of a dwelling with intent to commit some crime, under circumstances not amounting to burglary in the first degree, it is not essential to burglary in the second degree that it was committed in the nighttime.

Appeal from a judgment of the superior court for Okanogan county, Taylor, J., entered January 13, 1910, upon a trial and conviction of burglary in the second degree. Affirmed.

C. Burton and E. C. Jennings, for appellant.

William C. Brown, for respondent.

Gose, J.—The defendant was convicted of the crime of burglary in the second degree. The charge is that, on or

about the 5th day of November, 1909, he feloniously broke
and entered the dwelling house of William Plemmons, with
intent to commit the crime of larceny therein, etc.   After
the return of the verdict, he was tried upon a supplemental
information, and the jury found that he had been theretofore
twice convicted of burglary.   He has appealed from a judg-
ment entered upon the verdicts.

On the second Saturday of November, 1909, under the
direction of the superior judge, the county clerk drew from
the jury box the names of twenty-four jurors to be sum-
moned to serve for the ensuing month.   A few days later,
through pleas of guilty and the escape of the appellant from
jail, it developed that there were no jury cases for hearing
for the month of December, and the jurors were not sum-
moned to serve in that month.   On the second Saturday in
December, twelve additional names were drawn by the county
clerk under the directions of the superior judge, and the
two panels thus drawn were summoned for service at the
January, 1910, term of court.

The appellant's motion to quash the panel for irregularity
in drawing the jury was overruled.   It is contended that the
panel drawn in the month of November could serve only in
the following month, and that the appellant was prejudiced
by the refusal of the court to sustain his motion.   There is
no merit in the contention.   Laws of 1909, page 132, § 3
(Rem. & Bal. Code, § 101), requires the judge of a superior
court to divide the county into not less than three, nor more
than six, jury districts.   It makes it the duty of the county
clerk to make up a jury list in the month of July of each
year, containing the names of all the qualified jurors in the
county; to provide as many boxes as there are jury districts,
numbered to correspond with the districts, and to deposit
in each box slips of paper containing the names of the jurors
for that district.   Section 4 provides that terms of court
shall commence on the first Monday of each month, unless
postponed to a later date by order of the judge; that it

shall not be necessary to call a jury for any month unless the judge "shall consider that there is sufficient business to be submitted to a jury to require that one be called;" that where the judge of the superior court deems that the public business requires a jury term to be held, he shall require the clerk to draw a jury "to serve for the ensuing month;" that the names shall be drawn in equal numbers from each jury box; that the names of persons so drawn "to serve as jurors" shall be struck from the jury list, and shall not be called "to serve as jurors for five years," unless their service becomes necessary because there are not sufficient competent jurors remaining in the county who have not served within that time. Section 7 provides that, when a juror is excused from service for the causes enumerated in the section, his name shall be placed upon the jury list, and he shall be summoned to serve at the next succeeding jury term.

The precise contingency presented here is not covered by the letter of the statute. Rem. & Bal. Code, § 2140, provides that "challenges to the panel shall only be allowed for a material departure from the forms prescribed by law for the drawing and return of the jury." The departure from the statute was not a material one. Reading the statute as an entirety, it is apparent that its purpose is to distribute and equalize the burden of jury service; to secure a jury in all cases from the body of the county, and to avoid the evils that flow from an open venire and its attending mischief, the ever-present professional juror. This fact is emphasized by the provision in the act that an open venire shall not issue except by stipulation of the parties, made in open court, entered of record, and approved by the court.

"The statutory provisions with regard to making up the jury-list are ordinarily held to be merely directory, and errors and irregularities in failing to comply strictly with their provisions which are not prejudicial to the parties do not invalidate the list or furnish any ground for challenging the array; but a substantial compliance with the law is neces-

sary, and a disregard of the material provisions which make up the essential features of the system and are designed to secure and preserve a fair and impartial trial is not a mere irregularity, and is ground for challenging the array, even though it does not affirmatively appear that any injury has resulted therefrom." 24 Cyc. 217, 218.

"Statutory provisions respecting the drawing of the panel are generally regarded as directory merely, so that irregularities therein, unless plainly operating to the prejudice of the challenging party, form no ground for challenging the array." 1 Thompson, Trials, § 34.

In *State v. Krug*, 12 Wash. 288, 41 Pac. 126, speaking to the question of the failure of the county commissioners to select and certify the names of the grand jurors as directed by statute, this court said:

"Nothing appears in the record to indicate that the defendant was in any way injured by the action of the court, or that the grand jurors were not qualified grand jurors under the law. The qualification of a grand juror after all is the main question to decide, and that question could have been decided in each instance by an examination of the individual juror."

It is not claimed that the county had not been divided into jury districts, nor is it claimed that there was any departure from the terms of the statute in depositing the names of the jurors in the proper boxes, or in drawing their names from the jury boxes. The only deviation from the statute was in the time of the drawing of the first twenty-four names. We think there was a substantial compliance with the spirit of the statute. It is apparent that the material provisions which make up its essential features were not disregarded. What we have said disposes of the objection to the individual jurors, based upon the same ground.

Pending the argument on the motion to quash the panel, and before the jurors had been called to the box for examination as to their qualifications, the court inquired of counsel on what day the appellant broke jail. The contention that this was a comment on the facts in the presence of the jury

is untenable. It does not appear from the record that any juror was then in the court room.

The appellant was arrested on November 8, 1909, escaped from jail on November 17, and was recaptured and returned to jail on or about November 20. On December 6, he was arraigned, and counsel was appointed to defend him. On the following day he entered a plea of not guilty, and the trial was set for January 11, 1910. On January 4, the counsel first appointed to defend him withdrew his appearance, and other counsel was appointed in his stead, and the trial was reset for January 10. After the motion to quash the panel had been overruled, a motion for a continuance was presented and denied. This ruling is assigned as error. The actual trial began on January 11. The appellant took no steps to secure the issuance of a subpoena until January 6. After the case was set for trial, he had more than a month in which to secure the attendance of witnesses. He waited until within five days of the trial before taking out a subpoena. In his affidavit for a continuance, the appellant states that his witnesses are at Spokane. The sheriff stated in his answering affidavit that the appellant made no effort to obtain or locate these witnesses by correspondence with them, until January 8, when he handed him two letters, one addressed to one of the witnesses at Aetna, in Clarke county, Washington, and the other addressed to the other witness at Spokane. This was not due diligence. No excuse is shown for the delay. The court was diligent in appointing counsel to defend the appellant. There was no abuse of discretion in the denial of the motion.

The complaining witness testified that he left his house on the morning of November 5, and that, upon his return the following evening, he discovered that certain articles of personal property, including a jar of fruit, had been taken; that the next day he found the fruit jar at the spring near the house, partially empty; that "whoever it was had eaten all they wanted out of it and left it setting there," and that "I

found those shoes laying there in the draw below the spring where he had eaten his dinner, and there wasn't any one else that I know of that could have put them there." The appellant's counsel then asked that the statement, "there wasn't any one else that I know of that could have put them there," be stricken. The court remarked: "It is a matter of his opinion any way." This ruling is assigned as error. The statement about the shoes clearly refers to the unknown person who had eaten the fruit at the spring. While the statement was merely the opinion of the witness and immaterial, no prejudice resulted from the court's ruling.

A witness for the state testified that the appellant was then wearing the witness' shoes, and that the witness had tried on one of two shoes shown him; that it fit him, and that he could wear it. Error is suggested in the admission of this testimony. It does not clearly appear that the shoes identified by the witness are the shoes found at the spring; but assuming that they are, as the argument suggests, there was no error in admitting the testimony. *State v. Nordstrom*, 7 Wash. 506, 35 Pac. 382. The appellant argues that the fact that the witness could put on one of the shoes, does not prove that he could wear them. Whether it tended to prove that fact was a question for the jury.

Another witness for the state testified that, the day following a burglary of the Gillespie store at Brewster, he was driving a stage from Okanogan to Brewster; that he observed a man near the road; that when the latter saw the witness, he turned and went into a bunch of brush and lay down; that the man had his hat over his face so as to conceal it, and that he could not identify him. The admission of this testimony is assigned as error. Plemmons, the complaining witness, had testified that the day after the articles were taken from his house, he followed tracks leading from his house to a point above the Davis place, and above the bench near his house. The witness further said that he had heard Mr. Plemmons' testimony; that he was slightly acquainted with

the country in the vicinity of the Plemmons house; and that the tracks Plemmons described, if continued in the course indicated, would reach the stage road at the point where he saw the unknown man. The appellant says that this evidence does not tend to connect him with the crime charged. It must be admitted that standing alone it has no probative force, but as we shall see later, taken in connection with other evidence in the case, it is a circumstance tending to connect the appellant with the Plemmons burglary. The reference to the burglary at Brewster was only for the purpose of enabling the witness to fix the date he saw the man near the stage road.

Another witness testified that he saw a man in Brewster the day before the safe was broken, who wore a mackinaw coat and had two weeks' growth of beard. This statement was made by the witness in answer to a question whether he saw a man in Brewster, about November 4 or 5, who resembled the appellant. The statement does not reach the dignity of evidence, tends in no way to identify the appellant, and of course could not have been prejudicial. Trial by jury would be a farce if prejudice were presumed from such trivial incidents of the trial. There is, however, other competent evidence to the effect that the appellant, at and before the time of his arrest, wore a mackinaw coat, and that he had a short growth of beard.

A witness for the state testified that in the early morning of the 5th day of November, 1909, the safe in his store at Brewster was blown open and the key to the back door taken. He was then shown a key taken from the possession of the appellant at the time of his arrest, and testified that he believed it was his key. He also identified certain knives taken from the appellant as his (witness') property, and stated that a steel wedge, similar to those found upon the appellant, was left in his store the morning the burglary was committed. It is contended that it was error to permit the witness to state that his safe was blown open. The purpose of the testi-

mony was to show that the appellant was in the vicinity of
the Plemmons house a short time before the commission of the
crime charged.    Brewster is about ten miles from the
Plemmons house.    A stage road extends northerly from
Brewster to Conconully and passes near the Plemmons house.
As we have seen, the house was entered between the morning
of November 5 and the evening of November 6.   On November
6 the appellant took passage on the stage north of the
Plemmons house, and was carried to Conconully the same day.
On the morning of November 8 he was arrested at that place.
He had in his possession when arrested a number of the articles
taken from the Plemmons house, and also a set of burglar's
tools.    The case was tried on circumstantial evidence, and
the purpose of this testimony was to fix the whereabouts of
the appellant about the time the Plemmons house was entered.
In short, its purpose was to show that the appellant was in
the vicinity and had the opportunity to commit the crime
charged.    The matter of the burglary, the key, the knives
and the wedge, tended to identify and locate him.    If the
appellant left a trail of crime behind him, the misfortune is
his, and that fact cannot defeat the right of the state to
connect him with the crime charged by proofs of all relevant
circumstances.    *State v. Dana*, 59 Wash. 30, 109 Pac.
191; 12 Cyc. 406-7.    Testimony otherwise relevant does not
become incompetent because it may tend incidentally to show
that the accused has committed another crime.    *State v. Hyde*,
22 Wash. 551, 61 Pac. 719; *State v. Norris*, 27 Wash. 453,
67 Pac. 983.    The appellant has cited *State v. Thompson*, 14
Wash. 285, 44 Pac. 533; *State v. Bokien*, 14 Wash. 403, 44
Pac. 889; *State v. Gottfreedson*, 24 Wash. 398, 64 Pac. 523.
The principle we have stated is recognized in these cases.
They also announce the familiar rule that proof of a previous
independent crime is not admissible for the purpose of proving
the crime charged.

The testimony of the sheriff, showing the escape and re-

capture of the appellant, was admissible as a circumstance tending to establish his guilt, and the error assigned to its admission is not meritorious.

It is further contended that burglary in the second degree, as defined in Rem. & Bal. Code, § 2579, must be committed in the nighttime, and that the court should have so instructed the jury. A comparison of the statute defining burglary in the first degree (Rem. & Bal. Code, § 2578), with that defining the second degree offense makes it apparent that the construction suggested is not warranted by the language used. The statute makes an entry, or a breaking and entry of a dwelling house with intent to commit some crime, under circumstances not amounting to burglary in the first degree, burglary in the second degree. There is abundant evidence which warranted the jury in finding either an entry, or a breaking and entry, of the dwelling house of Plemmons with intent to commit some crime. Indeed, it is conclusively shown that his dwelling house, which he had locked before leaving, was entered during his absence, and that several articles of personal property were taken and found in the possession of appellant at Conconully, two days later. The circumstantial evidence of the guilt of the appellant amounts almost to a demonstration. The plea of not guilty under the law left all defenses open, and the duty was imposed upon the state of anticipating any defense he might offer, such as an alibi or that he came lawfully into possession of the property of the complaining witness. To meet the burden, some circumstances, unimportant standing alone but possessing strength in connection with the other circumstances shown, were submitted to the jury. If it be conceded that some of the circumstances were so slight as to be immaterial, they were not prejudicial. Convictions in criminal cases will not be set aside for mere technical error which could not have worked prejudice to the accused.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, and MOUNT, JJ., concur.

PARKER, J. (dissenting)—I dissent.  I think that both the letter and the spirit of the statute were violated in compelling the accused to be tried by jurors who were drawn in November. The jurors then drawn were drawn for service during the *"ensuing month"* of December.  The fact that after their drawing it developed that there would be no business for them during that month was no warrant for using them in January.  To some this may seem technical, but it is a technicality which can easily be avoided, and the principle which will allow the time of drawing to be thus departed from will allow the substantial rights of the accused to be violated, even if it be said they were not in this case, though I think they clearly were.