[No. 18442.   Department Two.   March 25, 1924.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE DINAS, *Appellant.*[1]

HOMICIDE (48)—CRIMINAL LAW (110, 112) — EVIDENCE — OTHER OFFENSES. Upon an issue as to the motive for a homicide, it is proper to prove that deceased was one of two victims who were the only persons or witnesses having knowledge of the shooting of the brother of the deceased seven months previous to the crime charged, and the same is not inadmissible as tending to prove other offenses.

SAME (127)—CRIMINAL LAW (358)—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE. Upon an issue as to the motive for a homicide, in which two persons were killed at the same time and in the same manner, it is admissible to show financial dealings between both the victims and the accused, who had demanded money of and made threats against the victims.

NEW TRIAL (37)—NEWLY DISCOVERED EVIDENCE—CUMULATIVE EVIDENCE AS TO ALIBI. Where a new trial is asked for newly discovered

[1]Reported in 224 Pac. 597.

evidence which is cumulative, the trial court may, in the exercise of a sound discretion, deny the same, although the testimony relates to an alibi; and no abuse of discretion is shown where but little weight should be given to new evidence tending merely to show that a witness may have been mistaken in her positive identification of the accused at the place and time of the commission of the offense.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered July 21, 1923, upon a trial and conviction of murder. Affirmed.

*Joseph H. Smith* and *A. R. Rutherford,* for appellant.

*C. T. Roscoe, O. Duncan Anderson,* and *M. H. Forde,* for respondent.

PEMBERTON, J.—Appellant was found guilty of murder in the first degree. After the denial of a motion for a new trial, judgment and sentence of life imprisonment were entered, from which judgment this appeal is taken.

Appellant was charged with the crime of killing one Gus Karas, on March 17, 1923. There are three assignments of error, as follows:

"(1) The court erred in permitting testimony to go to the jury concerning financial transactions between the appellant, George Dinas and Cleopatra Karas.

"(2) The court erred in permitting testimony to go to the jury relative to the murder of one Pete Karas as tending to connect appellant with the murder of Gus Karas, or for any purpose whatsoever.

"(3) The court erred in denying appellant's motion for a new trial."

In determining the questions of law involved in this case it is necessary to review the facts. Prior to July 25, 1922, Mrs. Cleopatra Karas and Pete Karas, her husband, at Everett, Washington, were conducting a business known as the Home Bakery. On this date

Pete Karas was shot and killed on a country road near the city. Thereafter Gus Karas, the brother of Pete Karas, and George Chakos, brother of Cleopatra Karas, lived at the bakery, the home of Mrs. Karas. George Chakos had been sleeping in the kitchen at the rear of the bakery, while Mrs. Karas and the two children were sleeping in the south room of the shack on the lot in the rear of the bakery, and Gus Karas had been sleeping in a room in the north end of this shack. Between midnight and two thirty a. m., on March 17, 1923, Gus Karas and Cleopatra Karas were killed by being struck upon the head with some blunt instrument. The shack was then set on fire and the two children of Mrs. Karas were suffocated by the fire. The fire being extinguished, the bodies of Gus Karas and Mrs. Karas were found on the same bed in the south room of the shack.

The appellant had been an acquaintance of the deceased for a number of years, but about a year prior to the murder had moved to Morton, Lewis county, Washington, and was engaged in conducting a business known as the City Cafe. Appellant admitted that he had received money from Gus Karas for the purpose of going to Everett to kill Pete Karas. He admitted that he had purchased a gun for the purpose of killing Pete Karas, but lost heart because of kindly treatment at that time. Immediately after the killing of Pete Karas, the appellant, through blackmail, attempted to collect, and did collect, sums of money from both Gus Karas and Cleopatra Karas. He stated to others that he had something on Cleopatra and did not have to marry her to get her money, that he could get it anyway, and he did on a number of occasions issue ultimatums to her demanding money and threatening her if she did not comply. He came to Everett, called upon her attorney, and demanded that he call Mrs. Karas

by telephone. Upon her refusal he became angry and said: "She got the money. Patra, she give me the money, but Gus he got the Patra. I fix the Gus. She got the money in the bank." The following letter written by appellant was found in the Karas home after the homicide:

"Morton, Washington,
"January 3, 1923.

"Friend Gus: Learn as for health I am well. After all I have phoned to you three times to send me fifty dollars, but in vain I phone, as I have my store mortgaged you don't care to help me for Patra told me the restaurant can stay closed for a week, and I have lost seven days. In jail I have gone, but I get out of jail, but you will never get out. You remember you give me five dollars, and you told me to send me to hell. I remember it, but to hell with the circumstances. Only you can't fool me with five and ten dollars. Can you help me in this situation. The thousand was given to have your brother killed. Think that you are hanging on my neck. The head that you wear is mine. When I get my head you will have no head. You should know that you did it all for you didn't leave Patra to help me, and I will treat you as you are treating me. Now then send me fifty dollars, or send me the mortgage of my store, so I put it somewhere else to get two hundred dollars to buy. You know that it is bad times for me, and if I go broke I will go broke on account of you for you didn't help me with fifty dollars. I have my gun and watch pawned trying to save the situation. Answer me right away. I am in a situation. I am hanging for fifty dollars. On the 7th is rent. My last letter."

The following letter had been sent to both Gus Karas and Cleopatra Karas:

"Wire me three hundred dollars by Wednesday evening. You know what you and Gus have been doing. Unless I get the money you will both be put in jail."

It is claimed that it was error to receive in evidence the financial dealings between appellant and Cleopatra Karas, and testimony to show that Pete Karas had been killed about seven months previous. It is contended that by innuendoes the witnesses impressed the jury with the fact that appellant murdered Pete Karas, and that it has been the uniform holding of this court that proof of other crimes is not admissible for the purpose of proving intent where the *corpus delicti* has once been established, relying on *State v. Bokien,* 14 Wash. 403, 44 Pac. 889; *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523; *State v. Oppenheimer,* 41 Wash. 630, 84 Pac. 588; *State v. Smith,* 103 Wash. 267, 174 Pac. 9.

In the case of *State v. Bokien, supra,* the defendant was charged with the crime of drawing a check on a bank in which he had no funds. It was held to be error to admit evidence of other similar disconnected acts of the defendant. It was said:

"There was no connection whatever between the several transactions which were permitted to be shown and that for which the defendant was being tried, and the evidence objected to was therefore incompetent for any purpose."

In the case of *State v. Gottfreedson, supra,* where the defendant was charged with stealing a horse, it was held to be error to admit evidence of another theft of a horse by the defendant, because it was a separate and distinct offense not in anywise connected with the crime charged. The court said:

"The general rule is well established that proof of the commission of a separate and distinct crime will not be admitted for the purpose of aiding the conviction of defendant for the crime charged. There are exceptions, however, to this general rule, as where the testimony shows a connection between the transaction under investigation and some other transaction, and

where they are so interwoven that the omission of the testimony in relation to the other crime would detract something from the testimony which the state would have a right to introduce as tending to show the commission of the crime charged by the defendant. . . ."

In the case of *State v. Oppenheimer, supra,* the defendant was charged with obtaining money upon false representations. It was held to be error to show that he had obtained money from other people upon similar representations. The later cases, however, lay down a different rule. *State v. Craddick,* 61 Wash. 425, 112 Pac. 491; *State v. Leroy,* 61 Wash. 405, 112 Pac. 635.

In the case of *State v. Smith, supra,* the court held that evidence of similar independent crimes was not admissible to show intent where proof of the act characterizing the crime proves intent. In the case of *State v. Anderson,* 107 Wash. 336, 181 Pac. 696, 185 Pac. 624, in which the case of *State v. Smith* was considered, it was held that proof of other crimes was admissible to prove intent.

"While it is thoroughly well established that the commission of one crime cannot be proved on the trial of a defendant for another, merely for the purpose of inducing a belief in the minds of the jury that the accused is guilty of the crime for which he is being tried, on the other hand it is a part of the criminal law that whatever testimony directly tends to establish the guilt of a person on trial of the crime charged is proper, even though it tends to show guilt of another distinct offense." *State v. Geddes,* 22 Mont. 68, 55 Pac. 919.

See, also, *State v. Sigler,* 116 Wash. 581, 200 Pac. 323; *State v. Kaukos,* 109 Wash. 20, 186 Pac. 269; *State v. McDonald,* 116 Wash. 668, 200 Pac. 326.

"Where the motive for the crime charged is the concealment of some other crime either by destroying the

evidence of such other crime or by killing a witness who could testify relative to it, the evidence of such motive is admissible, even though it does show the commission of an extraneous crime." 8 R. C. L. § 197.

"If the appellant left a trail of crime behind him, the misfortune is his, and that fact cannot defeat the right of the state to connect him with the crime charged by proofs of all relevant circumstances. *State v. Dana,* 59 Wash. 30, 109 Pac. 191; 12 Cyc. 406-7. Testimony otherwise relevant does not become incompetent because it may tend incidentally to show that the accused has committed another crime." *State v. Leroy,* 61 Wash. 405, 112 Pac. 635.

"Testimony connecting a defendant with another and distinct crime is admissible if it is closely associated with the crime charged and furnishes evidence material to that crime." *State v. McDonald,* 116 Wash. 668, 200 Pac. 326.

It was proper for the state to prove the manner of the death of Pete Karas. This fact tended to show that the appellant had a motive in taking the lives of Gus Karas and Cleopatra Karas, the only two remaining witnesses having knowledge of the nature of the murder of Pete Karas. Since Cleopatra Karas was murdered at the same time and in the same manner as Gus Karas, it was proper for the court to admit testimony showing the financial dealings between appellant and both Gus Karas and Cleopatra Karas. This certainly shows that appellant had a motive to commit the act complained of, and his demands were being made upon, and his complaints were made against, both of these parties, as was his threat to injure both, and these facts were admissible. The fact that appellant may be charged with the offense of murdering Pete Karas and Cleopatra Karas is no reason for the exclusion of the testimony, when it tends to prove that these offenses were so connected that they directly tend to establish the guilt of appellant of the crime charged.

It is claimed that the court erred in denying the motion for a new trial. One of the defenses of appellant was an alibi. He claims that he was in the town of Morton, Lewis county, two hundred miles from Everett, on the night in question. Affidavits have been filed by five persons that they saw appellant in the town of Morton at eleven o'clock in the evening of March 16, and again on the morning of the 17th at six thirty o'clock. This is cumulative, since a large number of witnesses testified to approximately the same facts at the time of the trial. It is contended, however, that where the object is to prove an alibi, the rule making newly discovered evidence insufficient if cumulative has no application. *State v. Stowe,* 3 Wash. 206, 28 Pac. 237, 14 L. R. A. 609. Upon the facts in that case we said:

"And taking into consideration the indirect and meager character of the testimony upon which this conviction was based, and the character of the newly discovered evidence, as shown by the accompanying affidavits, we cannot with justice, refuse to reverse the order of the court overruling the motion for a new trial."

It was testified by the brother of Cleopatra Karas that appellant came to the bakery on the evening of the 16th between seven and eight o'clock and remained there for about fifteen minutes, talking in the Greek language with Cleopatra Karas. Mrs. Brown, another witness, testified that she saw appellant that evening in the store talking to Mrs. Karas. An affidavit of one Harry Jatos states that he was in the bakery on this evening at that time and talked with Cleopatra Karas in the Greek language; that his clothes and general appearance resembled that of appellant. This was for the purpose of showing that Mrs. Brown saw Jatos that evening instead of appellant. Upon the hearing

of the motion for a new trial this Harry Jatos was brought before Mrs. Brown to see whether she would identify him as the man at the bakery on that evening. She stated that it was not Jatos, but again identified appellant as the man.

The trial court, having seen the witnesses and heard the testimony, has the advantage of the appellate court, and it seems that great efforts were put forth on the part of the trial judge to ascertain whether or not there was any foundation for this claim of Jatos. The trial court stated:

"I do not place any particular weight in the affidavit of Jatos because I realize the fact that it is a very easy matter for him to have ascertained from other sources the information which he gave concerning what occurred in the bakery on that night . . . . I am convinced that Mrs. Brown is just as sure now as she ever was that Dinas is the man whom she saw in the bakery on that night. I could not see how the jury could have arrived at any other verdict, under the evidence, without doing violence to their common sense. . . . And I did not take much weight in the alibi testimony as I heard it and I think the jury did likewise. I feel that Dinas has had an absolutely fair and impartial trial by a fair and impartial jury."

We have recently held that, where the newly discovered evidence is cumulative, the trial court may, within its sound discretion, deny a motion for new trial even though the newly discovered evidence supports the defense of an alibi. *State v. Humphreys,* 118 Wash. 472, 203 Pac. 965; *State v. Parker,* 114 Wash. 428, 195 Pac. 229; *State v. Wilcox,* 114 Wash. 14, 194 Pac. 575.

Taking into consideration the character of the proof and the nature of the newly discovered evidence as shown by the affidavits in support of the motion for a

new trial, we are satisfied that the trial court did not abuse its discretion in refusing to grant the motion.

The judgment will be affirmed.

MAIN, C. J., MITCHELL, FULLERTON, and BRIDGES, JJ., concur.