[No. 23134. Department Two. October 27, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. H. C. CLAMP, *Appellant.*[1]

L. B. *Sulgrove*, for appellant.

*Bertil E. Johnson, H. B. Gardner*, and *B. D. Scott*, for respondent.

[1]Reported in 3 P. (2d) 1096.

HOLCOMB, J.—Appellant and one Patterson were jointly charged with obtaining money by false pretenses, trick and device. The charge was that the two defendants confederated together, appellant falsely representing that he was a broker and agent of Patterson, and sold a wash rack and auto laundry business and fixtures in Tacoma, Pierce county, Washington, by making false representations concerning the same upon which the purchaser relied and believed, and by which he was induced to pay them the sum of three hundred fifty dollars, it being alleged that defendants falsely represented

" . . . that the same had been purchased by the said E. R. Patterson four months prior thereto for the sum of $800 cash, and had been operated by him during that time and they, then and there, by means of said false and fraudulent representations, pretenses, trick and device, which the said Christiansen believed and upon which he relied, induced the said Carl Christiansen to pay them the said sum of $350 for a one-half interest in and to said business and fixtures, but in truth and in fact the said H. C. Clamp was not a broker or agent of said E. R. Patterson, but was his confederate, and the said E. R. Patterson did not own said wash rack and auto laundry fixtures, had not purchased the same at any time nor for any sum and had no title thereto, and the said business and fixtures had not been operated by said H. C. Clamp or E. R. Patterson prior thereto."

Defendants were tried jointly and convicted. Motions for a new trial were interposed upon the ground of error at law occurring at the trial, which were denied and defendants were sentenced. Defendant Clamp separately appeals.

The evidence shows that appellant came to Tacoma with Patterson and, through advertisements in a local newspaper, met Christiansen, the complaining witness. Appellant introduced him to Patterson. Appellant and

his codefendant had previously made arrangements with a firm by the name of Crusoe Brothers to rent a wash rack, operated in connection with a service station at Seventeenth street and Pacific avenue. They had concluded their arrangements with Crusoe Brothers, and it was agreed that Patterson should rent the rack. Patterson represented to the Crusoe Brothers that appellant was his uncle. During the negotiations with Crusoe Brothers, and in the presence of appellant, Patterson represented himself as one James Howard, and the receipt for an initial payment on the first month's rent was issued to James Howard. The chattels and equipment, which had been rented by Crusoe Brothers at Seventeenth and Pacific, were of substantial value, totalling about seven hundred dollars. They did not own the equipment and chattels, but merely rented or leased them.

At about the same time, appellant set himself up as a curbstone broker. He had no office space in any building, but secured the right to use a telephone and meet prospects at the auto laundry of one Fairweather. In negotiating with Fairweather, appellant used the name of Harry Clark. Appellant published an advertisement in Tacoma newspapers under the classification of business opportunities, reading:

"Partner auto laundry. $50.00 a week, share profits. Experience unnecessary if steady and willing. Help service cars. Small investment."

In response to this advertisement, the complainant, Christiansen, approached appellant about October first. Christiansen met appellant at the Fairweather auto laundry. After a brief conversation with him, appellant took Christiansen out in front of the building of the Fairweather auto laundry, and introduced him to Patterson under the name of James Howard. The three of them then talked about the purchase of a half

interest in the wash rack that Patterson was represented to own, but did not own. During this conversation at which all three men were present, Patterson represented that he had bought the auto laundry four months before, had paid eight hundred dollars for it, and that now he had so much business he wanted a partner.

Patterson then took Christiansen in the car with him, and they drove down to the Crusoe Brothers wash rack, where Patterson showed him all of the equipment that he said he owned in the operation of the business. They then returned to the Fairweather auto laundry, met appellant, who had a bill of sale already made out, and Christiansen went to his bank to secure the three hundred fifty dollars for the purchase of the half interest in the wash rack. Patterson then acknowledged the bill of sale before a notary public under the name of James Howard, and warranted that the equipment in the wash rack was free and clear of all encumbrances and that he was the sole owner thereof. Upon the payment of the purchase price by Christiansen, the bill of sale was delivered by Patterson to him. Christiansen went to the wash rack he was supposed to have purchased the following morning, but Patterson never returned.

On the day that Christiansen paid him, Patterson gave appellant one hundred dollars of the money, and the two of them left on the same afternoon for Vancouver, B. C. They remained in Vancouver about a week and came back to Seattle together, where they set themselves up in business in a similar manner. After a brief visit to Tacoma by Patterson, where he learned that the officers were looking for him, he returned to Seattle and there rented another auto laundry under the assumed name of Reynolds. Appellant, under the name of Harry, again set himself up as a

curbstone broker, with the privilege of the use of a telephone in a garage in Seattle, and published advertisements in Seattle newspapers almost identical in wording with those that had been published in the Tacoma papers, but used a different assumed name.

In response to an advertisement appearing in a Seattle paper, one Herd went to the garage where appellant was meeting prospects. Appellant took him down to the garage, in which the auto laundry had been rented by Patterson under the name of Reynolds, and introduced Patterson to Herd as Reynolds. Herd and Patterson looked over the premises at the garage, and Patterson showed him the pump and other equipment used in operating the wash rack and represented to him that he owned the pump, when, in fact, he did not own it. They agreed upon a sale price, and Patterson suggested that they go back to appellant's place to have a bill of sale drawn. While the bill of sale was being drawn, Herd went to his bank to secure the money but was unable to get it, as it was a holiday.

On the same day, officer Lawson of Seattle answered the advertisement appearing in the Seattle paper. He went to appellant for the purpose of determining if these were the same men as were wanted by the authorities in Tacoma, and for that purpose stated that he was interested in purchasing a garage. While officer Lawson was there, Herd returned from the bank and informed appellant that he could not secure the money as the banks were closed. Appellant was then placed under arrest and a few minutes later Patterson was arrested.

On appeal, appellant urges two errors: (1) in admitting the testimony of a purported attempt to sell Herd an interest in a wash rack in the Eighth avenue garage in Seattle, which occurred subsequent to the offense charged; and (2) in admitting testimony of

the alleged attempt of appellant to interest officer Lawson in a garage in Seattle.

Appellant asserts that in no way can these transactions be said to be related as a part of a general scheme any more than those set forth in the case of *State v. Bokien,* 14 Wash. 403, 44 Pac. 889; *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523; and *State v. Oppenheimer,* 41 Wash. 630, 84 Pac. 588.

■ After reading the record, it is clear beyond any reasonable doubt that appellant and his codefendant confederated together to conceive and consummate the general scheme employed by them of obtaining money by falsely pretending to have something to sell which neither one had. One acted as the owner and the other as his agent and broker. The scheme was ingeniously contrived, and was as apt to deceive the wary as the unwary. It is clear that the system initiated in Seattle by appellant and his codefendant, which was frustrated by their arrest, was the same as the plan and scheme used in Tacoma by which Christiansen was defrauded.

The cases cited and relied upon by appellant are inapt. *State v. Smith,* 103 Wash. 267, 174 Pac. 9, another largely quoted, is misinterpreted.

The first cases were reviewed and distinguished in *State v. Craddick,* 61 Wash. 425, 112 Pac. 491, in which the general rule as stated in those cases was reaffirmed, but the exception to the rule was just as distinctly announced, which is that, when the testimony offered tends to prove a general scheme for the perpetration of a crime similar to the one with which the defendant is charged, the testimony is admissible. It was said that the class of cases must, of course, be cognate, or it would result in convicting a man of one crime because he had been shown to be guilty of another. We again discussed the cases cited by appellant in *State v. Schuman,* 89 Wash. 9, 153 Pac. 1084, Ann. Cas.

1918A 633. In that case, we adopted the statement by Wharton on Criminal Evidence (10th ed.), § 39, p. 146, as follows:

"When the object is to show system, subsequent as well as prior collateral offenses can be put in evidence, and from such system identity or intent can often be shown. The question is one of induction, and the larger the number of consistent facts, the more complete the induction is. The time of the collateral facts is immaterial, provided they are close enough together to indicate that they are a part of the system."

*State v. Smith, supra,* relied upon by appellant, was a prosecution for the sale of morphine without a physician's prescription, in which intent was immaterial, and the proof of four other past sales was inadmissible and prejudicial.

In *State v. Anderson,* 107 Wash. 336, 181 Pac. 696, 185 Pac. 624, the effect of the decision in *State v. Smith, supra,* was again carefully restated, and on a rehearing *En Banc* in the *Anderson* case, it was held that evidence of other crimes was properly admitted for the purpose of establishing criminal intent where necessary, that being the case where the acts charged against the defendant did not themselves characterize the offense, as was the case in *State v. Smith, supra.* See, also, *State v. Kreiss,* 133 Wash. 256, 233 Pac. 649. Compare, *State v. Linder,* 156 Wash. 452, 287 Pac. 16.

Under our cases, the evidence as to the Herd transaction and that of officer Lawson were legally competent and properly admitted.

The judgment is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.